[No. 32002.   Department One.   June 19, 1952.]

THORA K. PETERSEN, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*[1]

[1]Reported in 245 P. (2d) 1161.

*O'Leary, Meyer & O'Leary,* for appellant.

*The Attorney General* and *James J. Krinbring, Assistant,* for respondent department of labor and industries.

*Fred S. Merritt* and *Holman, Mickelwait, Marion, Prince & Black,* for respondent employer.

MALLERY, J.—Carl W. Petersen, age forty-six, had been engaged in extrahazardous employment for the Rayonier Pulp & Paper Company for about four years.

On January 5, 1950, he engaged in his usual duties as a deck man, which included scrubbing boxes, pushing a broom through the boxes to agitate the liquor therein, cleanup work, and the like. The work entailed considerable stooping, and required him to be on his feet most of the time.

At about ten o'clock a. m., he and two other employees rolled a fifty-gallon barrel weighing about four hundred pounds up a wooden ramp thirty-one feet long, which extended from the ground to a platform five feet high, after which he resumed his customary labors.

He went to the shop office and asked the foreman for some cold tablets, at about three o'clock p. m., because he thought he was catching cold. At 3:25 p. m., he complained to a fellow workman that he had just been sick to his stomach, had pains in his chest, and felt weak. He walked into a furnace room and laid down. He died at about 3:30 p. m. from a coronary thrombosis. He had complained of the same symptoms for a considerable period previous to the day of his death.

His widow, Thora K. Petersen, made a claim for a widow's pension, which was rejected. She appealed to the board of industrial insurance appeals. A first hearing was had before the board on August 23, 1950. She produced six witnesses in support of her claim and closed her case.

Thereupon, the employer and the department of labor and industries joined in a motion to dismiss the petition, which was denied. They did not stand on that motion, and at a continued hearing held on April 20, 1951, put in a defense.

On August 1, 1951, the board of industrial insurance appeals rejected the claim of the surviving widow for a pension. She appealed to the superior court and demanded a jury trial, which was set for November 1, 1951. At the conclusion of the reading to the jury of that portion of the record made by the claimant in her case in chief before the examiner for the board of industrial insurance appeals, the department of labor and industries moved to dismiss the case. The court granted the motion. This appeal is taken from that judgment of dismissal.

The appellant assigns the dismissal by the trial court as error, upon two different theories. The first raises a procedural question, and the second is directed to the sufficiency of the evidence to sustain a verdict. We shall dispose of the latter question first.

Cases involving statutory interpretation require that we restrict ourselves to a determination of the meaning of the statutory language in question. In this they differ from cases concerned with rules of the common law wherein wisdom and practicality, in the light of human experience, inhere in the judicial process.

Statutory cases have a fixed base from which we always start. Thus, they are unlike common-law cases wherein the later cases supersede the earlier ones to the extent of any differences between them.

We start, therefore, with the citation of the statute upon which the rights of appellant are predicated. RCW 51.08.100 [*cf.* Rem. Rev. Stat. (Sup.), § 7675; Rem. Supp. 1941, § 7679-1], reads as follows:

■ " 'Injury' means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without; and occupational disease; and such physical condition as results from either."

The statute requires that an *injury* must produce "an immediate or prompt result." An immediate or prompt result need not be the ultimate effect or result, as for instance, where the ultimate result (death) followed some four hours after the immediate symptoms produced by the injury. *Bergagna v. Department of Labor & Industries,* 199 Wash. 263, 91 P. (2d) 551.

■■ The barrel-rolling incident satisfies the statutory requirement that there be a tangible happening occurring from without. We have not been exacting as to the statutory "tangible happening" in heart cases. Nevertheless, the happening must be sudden and tangible. An incapacity due to the relatively slow and insidious inroads of a progressive and apparently incurable disease, does not satisfy the requirement of the statute. *Higgins v. Department of Labor & Industries,* 27 Wn. (2d) 816, 180 P. (2d) 559.

The "traumatic nature" of the "tangible happening" (barrel rolling), in this case, is not readily apparent. However, our decisions, under the doctrine of *stare decisis,* unmistakably dispense with the showing of an external physical violence. *Metcalf v. Department of Labor & Industries,* 168 Wash. 305, 11 P. (2d) 821; *McKinnie v. Department of Labor & Industries,* 179 Wash. 245, 37 P. (2d) 218; *McCormick Lbr. Co. v. Department of Labor & Industries,* 7 Wn. (2d) 40, 108 P. (2d) 807; *Sumerlin v. Department of Labor & Industries,* 8 Wn. (2d) 43, 111 P. (2d) 603; *Guiles v. Department of Labor & Industries,* 13 Wn. (2d) 605, 126 P. (2d) 195. We are satisfied that appellant made a *prima facie* case as to the foregoing elements of the statute.

■ However, the language of the statute clearly requires a *causal* relationship between the *happening* and the *result.* In "heart cases," the causal connection between *happening* and *result* and the time element expressed in the phrase "producing an immediate or prompt result" are frequently closely related.

Thus, where death follows a tangible happening immediately, the time element is persuasive to a layman of the existence of a causal relationship, rather than a bare coincidence. It is also significant to the expert medical witness.

The medical testimony in this case is specific upon this point. We set some of it out and couple it with the statement that the entire record, in this case, contains no medical testimony more favorable to the appellant than the following excerpts:

"Q. Assuming doctor, that the deceased was employed at the time of his death and that the requirements of his employment caused him to be on his feet during the major portion of his working day, assuming that the main requirement of this employment was using what they have called 'brooms' in slushing liquids out of large perforated boxes from which the fluid is dispelled, and assuming further that shortly before the death of the deceased he was engaged with two other men in the rolling of a 400 pound barrel of approximately 60 feet in circumference up a ramp 31 feet long, which ramp rises at a 16% incline, and assuming further that the footing on the ramp was icy and slippery and tying in with this assumption your prior knowledge of the medical condition of this man, would you say that such exertion as required by such employment, if any, would have contributed to the death of the deceased, Carl W. Petersen? [COLLOQUY] A. Of course the time factor would play a part. Three men rolling a 400 pound barrel up an incline, even if it was icy, I wouldn't say was terrifically hard work. In a susceptible individual that type of exertion may contribute, but in that particular thing, from what I can understand of his work, I don't believe that I can say definitely that any one particular act would be responsible for death. In a susceptible individual any activity, depending upon the degree of damage to the circulatory system and the heart particularly, would probably make a difference. Activity would be more likely to produce it but not necessarily. Death could occur any time in a person with sufficiently damaged blood vessels if a clot is formed. Q. Then may I ask you, would you label the deceased as a susceptible person? A. Yes, I definitely would. Q. And do you feel that any exertion may have contributed to that death? A. That is any person who has those defects, even walking doing anything, might contribute. We know that exertion does in susceptible individual but I don't feel I can state that any particular thing caused it. I don't know what he did at home or on his way to the mill or while he was there and it might all be tied in, I don't know. · EXAMINER BURGESS: What part does the time factor play in this situ-

ation?  DOCTOR LE COMPTE:  If he were strained heavily and death had occurred while doing that heavy job, why then I would say that very probably death was caused by that work but if it were an hour or hours afterwards without any strain whatever, I would suspect that the exertion—that is any one particular instance—may not have been a factor."

■ ■  We have never held that the dependent of one who dies of heart trouble is entitled to compensation because the onset of an attack occurred while engaged in extrahazardous employment.  We have never dispensed with a minimum showing that the employment or an incident occurring during employment must have been, more likely than not, a contributing factor to the death, without which the death would not have occurred when it did.  From the testimony quoted, it would appear that there is a failure of proof that the deceased would not have died solely of his malady when he did, even if the barrel-rolling "happening" had not occurred.  We hold that no injury within the purview of the statute has been shown.

■  On the procedural aspects of this kind of a case, it may well be remembered that the trial in the superior court is upon the record made before the board of industrial insurance appeals.  No new testimony may be offered.  This presents a situation characteristically different from an ordinary trial, in which the unpredictable scroll unrolls as the trial progresses.  With the completed record before the trial court prior to trial, it would appear that Rule of Practice 16 (5), 34A Wn. (2d) 80, offers an opportunity for the parties to present the record to the trial court for the purpose of having rulings made upon objections to the evidence, motions to strike, motions for dismissal or nonsuit, which can all be disposed of with considerable economy before a jury is impaneled.  This procedure has been specifically sanctioned by this court.  *Kralevich v. Department of Labor & Industries*, 23 Wn. (2d) 640, 161 P. (2d) 661.

■ ■  It is always the duty of the trial court to take a case from the jury when the most favorable construction of the evidence, and the inferences to be drawn therefrom, will

not sustain a verdict. It is the contention of the respondent that it had the right to move as it did for a dismissal at the conclusion of the reading to the jury of the appellant's case in chief as made before the examiner. The appellant, on the other hand, contends that she is entitled to have the entire record considered on such a motion.

We resolve this controversy by stating that the motion would lie at any time, preferably before impaneling a jury, but that, whenever made, it calls up the entire record for consideration. This is because a defendant who does not stand upon a motion to dismiss, at the close of a plaintiff's case, waives it. *Blair v. McKinnon, ante* p. 492, 244 P. (2d) 250. By putting in a defense, one risks supplying any existing deficiency. *Olympia Brewing Co. v. Department of Labor & Industries*, 34 Wn. (2d) 498, 208 P. (2d) 1181. All parties benefit or suffer from the testimony of all witnesses. The theory that a party calling a witness has a proprietary interest in the testimony such that the adverse party cannot benefit from it, is both novel and unsound.

The appellant's contention is technically correct. Nevertheless, we have passed upon the merits of the entire record, for it would be an idle thing to return the cause to the superior court when it must reach the same conclusion on the entire record as it did on the appellant's case in chief.

The judgment is affirmed.

SCHWELLENBACH, C. J., GRADY, DONWORTH, and WEAVER, JJ., concur.