[No. 2471-1.    Division One.    December 23, 1974.]

TODD C. WARMINGTON, *Respondent,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Appellant.*

*Slade Gorton, Attorney General,* and *Gerald L. Coe, Assistant,* for appellant.

*Schroeter, Jackson, Goldmark & Bender* and *Croil Anderson,* for respondent.

HOROWITZ, J.—Petitioner, Todd C. Warmington, filed an application for unemployment insurance benefits on October 8, 1971. He established a base period of the third and fourth quarters of 1970 and the first and second quarters of 1971. Petitioner's potential benefit year commenced October 3, 1971, and extended through September 30, 1972.

Petitioner's application for unemployment insurance benefits was denied on November 12, 1971. On that same day, petitioner filed a notice of appeal. After a hearing the appeal examiner entered an order on February 22, 1972, setting aside the determination notice and granting petitioner's application for weekly benefits.

The employer, University of Washington, filed a petition for review on March 2, 1972, to the commissioner of the Employment Security Department. On May 18, 1972, the acting commissioner for that department issued an order remanding the cause for additional testimony. Further testimony was taken, and on July 5, 1972, the acting commissioner issued a decision of commissioner setting aside the order of the hearing examiner dated February 22, 1972. Petitioner served his petition for review by superior court on August 4, 1972, and the matter was set for trial for July 10, 1973. The trial court reversed the decision of the acting commissioner and, accordingly, held petitioner was entitled

to unemployment insurance benefits. In so doing, he entered findings and conclusions, including the following:

III

RCW 50.44.040 (8) provides, in pertinent part, as follows:

"The term 'employment' as used in sections 18, 19 and 20 of this 1971 amendatory act shall not include services performed:

\* \* \*

"(8) In the employ at a school, college, or university, if such service is performed by a student who is enrolled and is regularly attending classes at such school, college or university, . . ."

IV

From September 16, 1969 through June 15, 1970 and September 1970 through June 1971, the petitioner was a predoctoral lecturer in the Department of Architecture at the University of Washington.

V

During September 1969, through June 1971, the petitioner did not have any "classes" to attend.

VI

During September 1969 through June 1971, the petitioner had irregular meetings with his faculty advisor but no definite arrangements concerning time, place or content of discussion. The petitioner did not have any "regularly" scheduled classes to attend.

VII

During September 1969 through June 1971, the petitioner did not "attend" anything.

He concluded from the findings:

There is no basis in fact to support a conclusion that the petitioner was regularly attending classes while a predoctoral lecturer from September 1969 through June 1971 and the Decision of the Acting Commissioner dated July 5, 1972 that the petitioner's services were exempt from unemployment insurance coverage pursuant to the provisions of RCW 50.44.040 (8) is clearly erroneous and is hereby reversed.

Conclusion of law No. 3.

The university contends the court erred in entering findings of fact Nos. 5, 6 and 7, and conclusions of law Nos. 2

and 3. These findings and conclusions raise the basic legal question whether respondent was "a student . . . enrolled and . . . regularly attending classes" at the university within the meaning of RCW 50.44.040(8). The pertinent part of that statute is as set forth in finding of fact No. 3, *supra*. If petitioner does not come within the exemption from coverage, petitioner is entitled to the weekly benefits claimed.

There is no doubt petitioner was employed by the University of Washington as a predoctoral lecturer in the Department of Architecture at the University of Washington, and was a student enrolled in the Department of Urban Planning for thesis work at the University of Washington. The remaining question is whether he was "regularly attending classes at such . . . university."

In construing statutory language capable of more than one meaning, we must ascertain the meaning intended by the legislature. If that intention is not expressly stated, we may resort to statutory or other rules of construction with which the legislature was presumably familiar when it enacted the legislation. Thus, RCW 50.01.010, the preamble to the unemployment compensation act here involved, provides:

> [T]his title shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum.

Moreover, the statutory language "regularly attending classes at such . . . university" is found in RCW 50.44.040(8), which provides for a statutory exemption from coverage under the unemployment compensation act. An exemption from coverage must be strictly construed. *In re All-State Constr. Co.*, 70 Wn.2d 657, 425 P.2d 16 (1967). This principle is well established. See cases cited in the margin.[1] *Crouch v. Murphy*, 390 Ill. 112, 114, 60 N.E.2d 879, 881 (1945), states the justification for the rules as follows:

---

[1] *Tennessee Coal, Iron & R.R. v. Martin*, 251 Ala. 153, 36 So. 2d 547 (1948); *American Sumatra Tobacco Corp. v. Tone*, 127 Conn. 132, 15

This court has construed the Unemployment Compensation Act to be remedial legislation and held that it should be liberally construed to the end that intended benefits under its provisions be received by employees, and that the act is to be strictly construed against an employer claiming exemption from liability.

Moreover, a commonly recognized rule of statutory construction, and one expressly relied on below (Conclusion of law No. 2.), is that, in the absence of statutory definition, the language of the statute must be understood in its usual and ordinary sense. *Cramer v. Van Parys*, 7 Wn. App. 584, 500 P.2d 1255 (1972).

■ We therefore consider the meaning of the word "class" in the absence of evidence of a different legislative intention, in light of the rules of statutory construction discussed. The word "class" is capable of more than one meaning, depending upon the purpose of its use and the context in which found. The usual and ordinary meaning of the word "class," when referring to a class in the context of an educational institution, is

a body of students meeting regularly to study the same subject under the guidance of an instructor, to listen to lectures, or to engage in guided discussions or in recitations . . .

Webster's Third New International Dictionary (1969). The ordinary meaning of the word "class" as just defined is consistent with the rules summarized in *Crouch v. Murphy, supra.*

The court's findings Nos. 5 and 6, *supra*, appear to adopt the definition of "class" above quoted. Conclusion of law No. 2. Substantial evidence supports these findings. Petitioner was not hired because he was a student. He was hired, according to Professor Thomas L. Bosworth, chair-

A.2d 80 (1940); *Pickman v. Weltmer*, 191 Kan. 543, 382 P.2d 298 (1963); *Ford Motor Co. v. Kentucky Unemployment Compensation Comm'n*, 243 S.W.2d 657 (Ky. Ct. App. 1951); *Kroger Co. v. Industrial Comm'n*, 314 S.W.2d 250 (Mo. Ct. App. 1958); *Davis v. Aluminum Co. of America*, 204 Tenn. 135, 316 S.W.2d 24 (1958); *Bennett v. Hix*, 139 W. Va. 75, 79 S.E.2d 114 (1953),

man of the Department of Architecture, because of his "unique expertise. . . . Mr. Warmington would have been hired to perform the same services even if he had not been enrolled." Exhibit No. 8, Cr.-1. In a letter dated December 15, 1971, from Richard D. Shinn, associate professor and acting chairman of the College of Architecture and Urban Planning, it is stated:

Mr. Todd Warmington completed regular classwork in Spring Quarter 1969. In the following academic terms until June of 1971 he was registered for individual study, which does not require class attendance, in connection with his Predoctoral Lecturer appointment in the Department of Architecture. The latter employment was terminated on August 15, 1971, and he has been registered as an "on-leave" status to this date.

Exhibit No. 9, Cr.-2. Dean Morgan David Thomas of the University of Washington, a witness for the university in the second hearing, stated: "I didn't say that he had to attend regular classes." Mr. Warmington conferred with his faculty advisor at least once a quarter and they would meet at some convenient time in the coffee shop and discuss registering for the next quarter. It is true petitioner's thesis requirements required he consult with his faculty committee overseeing his program, but this did not require he be a student "regularly attending classes" at the university.

The trial court was empowered to decide that the acting commissioner's decision concerning the meaning of class was "clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order . . ." RCW 34.04.130(6)(e). The trial court, after reviewing the substantial evidence before him on which he based his findings, appears to have been firmly convinced that a mistake had been committed by the acting commissioner even though there was evidence supporting his decision or order. *Department of Ecology v. Ballard Elks Lodge No. 827*, 84 Wn.2d 551, 555, 527 P.2d 1121 (1974). We cannot find the

370

court exceeded his power by entering the judgment appealed.

Petitioner requests an award of attorney's fees and costs for this appeal. Petitioner, as the prevailing party, is entitled to statutory costs. In lieu of the statutory attorney's fee petitioner is awarded the sum of $350 attorney's fees to be paid out of the unemployment compensation administration fund. RCW 50.32.160.

Affirmed.

JAMES and CALLOW, JJ., concur.

Petition for rehearing denied February 4, 1975.

Review denied by Supreme Court April 29, 1975.