[No. 925-3. Division Three. August 6, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. YVONNE L. WANROW, *Appellant*.

116

MUNSON, J., concurs by separate opinion; GREEN, J., dissents by separate opinion.

*Eugene Annis* (of *Lukins & Annis*), for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Fred J. Caruso, Deputy,* for respondent.

McINTURFF, C.J.—Defendant appeals a conviction of second-degree murder and first-degree assault with a deadly weapon. We reverse and remand the case for a new trial.

On an early August morning the defendant while at the home of a friend, Mrs. Hooper, wounded one man and fatally shot another who allegedly had molested Mrs. Hooper's 7-year-old daughter. Immediately after the shooting, Mrs. Hooper called the police by way of the Spokane Police Crime Check emergency telephone number. During the conversation Mrs. Hooper stated: "Please come to 2903 E. Gordon, there is a guy broke in and my girlfriend shot him." Subsequently the defendant took the telephone and spoke to the police operator stating that she had shot two people and "we warned you—we told you guys." Without the knowledge or consent of Mrs. Hooper or the defendant the telephone conversation was recorded. The resolution of the dispositive issue, whether the trial court erred in admitting into evidence the tape recording, rests on an interpretation of three recently enacted statutes.

RCW 9.73.030 provides that it is unlawful for a municipality to record "private" communications between

the individuals without the consent of all participants to the conversation. Evidence obtained in violation of this statute is not admissible in a criminal proceeding under RCW 9.73.050. An exception to these general rules is found in RCW 9.73.090.[1] This statute allows police personnel to record "incoming telephone calls to police . . . stations *for the purpose and only for the purpose of verifying the accuracy of reception of emergency calls.*" (Italics ours.) The phrase "private communication" is not defined in RCW 9.73 which deals with violations of the right to privacy.[2] *State v. Grant*, 9 Wn. App. 260, 511 P.2d 1013 (1973), construing the phrase "private conversation" found in RCW 9.73.030(2), held that a secretly monitored conversation between a defendant and a police officer at a police station, without the knowledge of the defendant, came within the meaning of the phrase "private conversation." There is no meritorious distinction between the conversation in *Grant* and the communication in this case. Although *Grant* involved a face-to-face conversation between two people, the fact that the conversation occurs in the form of a "communication" via telephone does not render the communication in this case something other than a private one. As stated in *State v. Grant, supra* at 265, to narrowly construe the term private conversation would

> unnecessarily fail to give full effect to the legislative purpose to protect the freedom of people to hold conversations intended only for the ears of the participants.

The telephone call was a "private communication" as that term is used in RCW 9.73.030(1). This conclusion presents the following issue: Can a communication which is lawfully recorded under RCW 9.73.090 be admitted into

---

[1]RCW 9.73.090 provides in part:

"The provisions of RCW 9.73.030 through 9.73.080 shall not apply to police and fire personnel in the following instances:

"(1) Recording incoming telephone calls to police and fire stations for the purpose and only *for the purpose of verifying the accuracy of reception of emergency calls.*" (Italics ours.)

[2]The phrase "private communication" is not found in the language of the Federal Communications Act, 47 U.S.C. § 605.

evidence in a criminal prosecution of a participant to the conversation?

The evidentiary prohibition contained in RCW 9.73.050, while excluding evidence obtained in violation of RCW 9.73.030, is silent as to the admissibility of a recording made under the authority of RCW 9.73.090(1). Thus, we must look to the legislative intent underlying RCW 9.73.090(1).[3] The narrow scope of RCW 9.73.090(1) is exhibited in the very wording of the statute and buttressed by the statements of Senator Andersen, a cosponsor of the bill during debate:

> On the other hand a person phoning the police department probably is not being injured particularly by having his call recorded. If he is talking with a public official, he probably expects it to be public information. It is not public information, of course, because these are held confidential . . .
>
> . . .
>
> . . . I do not think that they should have these things recorded when the people do not know they are being recorded. The point is that they are trying to make sure that they get the right address when they have a call to a robbery or they get the right address and so forth when a call comes in that the house is on fire.

Senate Journal, Forty-First Legislature, 2d Ex. Sess. (1970) at 205. Thus to admit a recording pursuant to RCW 9.73.090 into evidence in this case emasculates the prohibition of RCW 9.73.050 and makes the limited purpose of the recording a sham.

The plaintiff urges, in support of the trial court's ruling that since the defendant pleaded not guilty by reason of insanity it was proper to introduce any and all evidence of her conduct relevant to her state of mind at or near the time of the shooting.[4] Plaintiff further argues that

---

[3] *In re Estates of Donnelley*, 81 Wn.2d 430, 436, 502 P.2d 1163 (1972).

[4] *State v. Huson*, 73 Wn.2d 660, 440 P.2d 192, *cert. denied*, 393 U.S. 1096, 21 L. Ed. 2d 787, 89 S. Ct. 886 (1968); 2 J. Wigmore, Law of Evidence § 228, at 9 (3d ed. 1940). The rationale for this contention

if a police officer could testify as to what was said during the conversation it would be unreasonable not to admit the tape recording of the same conversation which is the best evidence available. The wisdom, need or appropriatenesss of legislation should not be questioned by a court.[5] It is not the function of this court to question the reasonableness of RCW 9.73.090(1), but to construe it so as to effect legislative intent.[6]

Although patently dissimilar, the prohibition found in RCW 9.73.050 is analogous in its operation to the physician-patient privilege. As observed in C. McCormick, *Law of Evidence* § 72, at 152 (2d ed. E. Cleary 1972) the sole purpose of such exclusionary statutes is not to aid the courts in determining the truth but to protect other interests and relationships deemed of greater importance than the truth.

Just as commencement of a personal injury action does not waive the plaintiff's right to assert the physician-patient privilege[7] a plea of not guilty by reason of insanity does not allow the court under the "evidence of all conduct rule" to permit an attending physician to testify as to the defendant's mental condition.[8]

While evidence of the content of the conversation be-

may be found in Green, *Proof of Mental Incompetency and the Unexpressed Major Premise*, 53 Yale L.J. 271, 276 (1944). The author notes that mental disorder manifests itself through behavior or individuals, *i.e.*, their speech, conduct, activities. The tape recording is very persuasive evidence in determining the question of the defendant's mental irresponsibility. Things which she spoke about, the manner in which she spoke them and the sound of her voice would be an invaluable aid for a jury faced with the problems of determining the defendant's mental state.

[5]*See Olsen v. Nebraska*, 313 U.S. 236, 246, 85 L. Ed. 1305, 1306, 61 S. Ct. 862 (1941).

[6]*See Petersen v. Department of Labor & Indus.*, 40 Wn.2d 635, 637, 245 P.2d 1161 (1952). The observation of Aristotle is apropos: "Even when laws have been written down, they ought not always to remain unaltered."

[7]*Bond v. Independent Order of Forresters*, 69 Wn.2d 879, 421 P.2d 351, 25 A.L.R.3d 1394 (1966).

[8]*See State v. Miller*, 177 Wash. 442, 32 P.2d 535 (1934).

tween the defendant and the crime check operator is arguably admissible through the operator,[9] the admission of the recording was error.

The remaining question is whether the error in admitting the tape constituted reversible error. After submission of the case, the jury deliberated on May 12, 1973, without access to the tape even though they requested to hear it again. The trial court refused this request until the following day at about 9:30 a.m. when the court allowed the jury to play the tape recording one time. Approximately 45 minutes later the jury reached a verdict. Prejudicial error is one which affects or presumptively affects the final results of the trial.[10] In light of this fact, we cannot say from the record whether the defendant would or would not have been convicted in the absence of the improperly admitted tape recording.[11] The admission of the tape constituted reversible error and the defendant is entitled to a new trial.

Finally, error is assigned to the trial court's exclusion of expert testimony relating to the defendant's Indian culture. Inasmuch as this issue may arise on retrial, we address ourselves to this issue. Defendant's counsel proposed calling an expert witness on Indian culture to testify: Indians are very family oriented; they maintain a strong feeling of respect for their elders; and unnatural sex acts are not accepted by Indian culture. Specifically, defendant's expert witness would have testified that an Indian, confronted by an older person attempting to perform an unnatural sex act on a young child, would undergo a more traumatic emotional experience than would a member of the Anglo-Saxon culture because of the highly respected position an older person possesses in the Indian culture.[12]

It is generally within the trial court's discretion to

---

[9]*See State v. Grant*, 9 Wn. App. 260, 267, 511 P.2d 1013 (1973).

[10]*State v. Mack*, 80 Wn.2d 19, 21, 490 P.2d 1303 (1971).

[11]*State v. Martin*, 73 Wn.2d 616, 440 P.2d 429 (1968).

[12]The decedent was not attempting to commit an unnatural sex act on a young child at the time he was shot by the defendant.

exclude or admit expert opinion.[13] Where the admissibility or exclusion of opinion evidence is fairly debatable the trial court has wide discretion which will not be reversed on appeal.[14] We cannot say that the court abused its discretion. However, we add that the trial court correctly ruled when it did not totally exclude this evidence but limited its use with respect to psychiatric testimony to show the effect defendant's Indian culture might have on her state of mind at the time of the shooting. Finally, defendant cites no authority to support her contention that evidence regarding one's cultural background is generally admissible.

Judgment of the superior court is reversed and the case is remanded for a new trial consistent with this opinion.

MUNSON, J. (concurring)—I am constrained to concur that the admission of the tape-recorded telephone conversation between the police department and the defendant was prejudicial error.

The legislature has mandated that a political subdivision of the state may not intercept, record, or divulge a private communication transmitted by telephone, without first obtaining the consent of all the participants to the communication, except that police and fire personnel may record incoming telephone calls *for the purpose and only for the purpose* of verifying the accuracy of reception of emergency calls. By so doing, the legislature has replaced judicial decisions allowing undisclosed mechanical recording of conversations, *State v. White*, 60 Wn.2d 551, 555-57, 374 P.2d 942 (1962); *State v. Slater*, 36 Wn.2d 357, 362-65, 218 P.2d 329 (1950); *State v. Salle*, 34 Wn.2d 183, 192-93, 208 P.2d 872 (1949), and two cases in which conversations were recorded with the consent of one of the participants but not all, *State v. Jennen*, 58 Wn.2d 171, 173-74, 361 P.2d 739 (1961), and *State v. Lyskoski*, 47 Wn.2d 102, 108-10, 287 P.2d 114 (1955). Here, there is no evidence of the express

---

[13]*Swartley v. Seattle School Dist. 1*, 70 Wn.2d 17, 21, 421 P.2d 1009 (1966).

[14]*Hill v. C & E Constr. Co.*, 59 Wn.2d 743, 746, 370 P.2d 255 (1962).

consent of all participants to the communication. There is no evidence the officer notified the defendant or her friend that the conversation was being recorded, which would have given them an opportunity to terminate the conversation. He did not ask their consent to continue the recording, nor did they acknowledge that they knew it was being recorded.

A substantial body of law in other jurisdictions holds that the consent of one of the participants to the interception or recording of a conversation, be it in person, by telephone, or other transmitting device, is admissible in evidence. *See* Annot., 97 A.L.R.2d 1283 *et seq.* However, when our legislature specifically stated that the consent of *all the participants* is required, that body of law became inapplicable in this state.

The next question is whether there is an implied consent. In *Commonwealth v. Gullett*, 329 A.2d 513 (Pa. 1974), the Supreme Court of Pennsylvania held that a telephone call to the police to report a homicide, the location of the body, and the possibility that this would be but one in a series of killings, was not a confidential conversation. The court said it was apparent the caller did not intend the privacy of the communication to be maintained, based upon the information conveyed, the emergency atmosphere the communication engendered, and the particular agency to which the disclosure was directed. The court held that it was an inescapable conclusion that a call made under such circumstances carried with it the permission of the caller to divulge the communication to authorized personnel other than the officer who happened to take the message and to use the communication to investigate the reported crime by any reasonable means.

I would adopt that rationale in this case were it not for the specific provision of RCW 9.73.090, which permits police personnel to record incoming telephone calls "for the purpose and only for the purpose of verifying the accuracy of reception of emergency calls." This does not carry the con-

notation that the legislature intended calls recorded for that specific purpose be extended beyond the language used. The police are bound to act upon the message and to use it as an entree to an investigation, but, under this statute, not as evidence against a caller. As noted in *Commonwealth v. McCoy,* 442 Pa. 234, 239, 275 A.2d 28, 30-31 (1971):

> [T]he Legislature has determined as a matter of state public policy that the right of any caller to the privacy of his conversation is of greater societal value than the interest served by permitting eavesdropping or wiretapping. Such a determination, when within constitutional limits, is solely within the discretion of the Legislature.

That rationale is applicable in the interpretation of the legislative intent of this statute. *Cf. People v. Kurth,* 34 Ill. 2d 387, 216 N.E.2d 154, 20 A.L.R.3d 1409 (1966). It is on this basis, and on this basis alone, that I concur that the admission of the recorded conversation was prejudicial error.

GREEN, J. (dissenting)—Contrary to the opinion of my colleagues, I fail to find a "private" communication in this case and would affirm the trial court's admission of the tape recording.

Only "private" communications are within the prohibitions of the statute. RCW 9.73.030(1) provides that it is unlawful to "intercept, *record* or divulge" any *"private* communication" transmitted by telephone without the consent of all participants. Even though a *"private* communication" is involved, the police are permitted to record such incoming calls for the limited purpose of "verifying the accuracy of reception of emergency calls." RCW 9.73.090(1). The majority correctly reasons that if a "private" communication is recorded by the police under RCW 9.73.090(1), it may not be admissible in evidence by reason of the limiting language of that provision and the evidentiary prohibitions contained in RCW 9.73.050. However, these restrictions apply only to "private" communications or conversations. Therefore, the basic question is whether

the communication in this case was "private." The majority in essence assumes the private nature of the call without considering the circumstances surrounding it and, in my view, errs.

The words "private communication" are not defined in the statute. *Webster's Third New International Dictionary* (1969) defines the word "private" as:

> . . . belonging to one's self . . . alone . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not openly or in public.

The Random House Dictionary of the English Language (1969) defines "private" as;

> . . . confidential . . . personal and not publicly expressed . . . secret . . . removed from or out of public view or knowledge . . . not open or accessible to the general public . . .

In the absence of legislative definition, the ordinary and usual meaning must be attributed to statutory terms. *Warmington v. Department of Employment Security*, 12 Wn. App. 364, 529 P.2d 1142 (1974).

Whether a telephonic communication is "private" or not depends upon the intent or reasonable expectation of the parties as manifested by the facts and circumstances in each case. In this case, I am unable to find that the communication was "private."

It is clear that the call to the police station was to report the shooting and request aid of the police and an ambulance. The defendant was not the initiator of the communication, but invited herself into the communication.[15] It is

---

[15]The call to the police was not initiated by the defendant, but by her friend, Mrs. Hooper. Mrs. Hooper immediately stated, "Please come to 2903 East Gordon, there is a guy broke in and my girl friend shot him." The officer requested that Mrs. Hooper stay on the line and at the same time the officer audibly relayed the information to a prowl car and requested an ambulance. It is readily apparent from listening to the tape recording that in the background the defendant shouted to Mrs. Hooper "get off the phone." Mrs. Hooper told the defendant that

evident that the defendant could overhear the police operator relay her statements to others, *i.e.*, a prowl car and an ambulance. Further, the conversation took place in the presence of other people at both ends of the line. In that conversation, she voluntarily stated that she shot two people. Considering all of the facts and circumstances, I can find no evidence that the parties intended or could reasonably expect this communication to be "private." Indeed, it is impossible for me to conclude that one who has just participated in a possible crime and calls the police department to report it can at the same time intend or expect that communication to be "private."

The majority's reliance upon *State v. Grant*, 9 Wn. App. 260, 511 P.2d 1013 (1973), is misplaced. In *Grant* the court was concerned with a surreptitious recording by a third party of what was determined to be a "private conversation" between two other parties under RCW 9.73.030(2). In the course of construing these words, the court said, at page 265:

> RCW 9.73.030(2) seeks to prevent *encroachment* upon the privacy of the parties to a conversation. The words "private conversation" . . . are not defined and have not heretofore been construed in any published opinion in this state. . . . In construing the statutory words "private conversation," we seek to best fulfill the purpose

the officer wanted her to stay on the telephone. Defendant replied "Give me that." or words to that effect and Mrs. Hooper said, "Well, you talk to them." The officer then asked defendant if the man who had been shot was still there. She replied that he was and related that the other man just went off and might come back with a gun. In response to an inquiry about that person's injury, defendant volunteered, "I don't know . . . I shot him twice." In response to a question about the other man (decedent) lying in the house, defendant stated, "I shot him with a .25 automatic. Will you get somebody up here, please, before that guy comes back." When the police arrived, defendant stated that she did the shooting and delivered the gun to the officers. At trial there was never any issue over whether defendant shot the two men. In fact, there is substantial evidence in the record to support the conclusion that the decedent was not a prowler but was brought to the house by a friend of Mrs. Hooper and the defendant for the purpose of settling a problem that existed between the defendant, Mrs. Hooper and the decedent.

of the statute. . . . In considering that purpose, we note the phrase "private conversation" is all-embracing and is broad enough to *include a confidential or privileged conversation, and one protected against disclosure* under the Fourth Amendment. To construe the words "private conversation" narrowly and grudgingly would unnecessarily fail to give full effect to the legislative purpose to protect the freedom of people to hold conversations *intended only for the ears of the participants.*

(Italics mine.) Accordingly, the court found a conversation between the defendant and his attorney to be private. Obviously, such a conversation is confidential in nature and not intended for the ears of third parties. Additionally, the court found a conversation between the defendant and a detective to be a private conversation, *i.e.,* "intended only for the ears of the participants." *State v. Grant, supra* at 265. However, the facts and circumstances surrounding this latter conversation are not contained in the opinion. Thus, we can only assume the existence of sufficient circumstances for the court to conclude that the conversation was intended to be "private." Consequently, there are insufficient facts for the majority's conclusion that no meritorious distinction exists between the conversation in *Grant* and the communication in this case.[16]

In my view, the majority errs in determining that the communication herein was "intended only for the ears of the participants" and thus "private" under *Grant* without basing such determination upon the facts and circumstances surrounding the communication. Such an approach assumes, in effect, that all telephonic communications to a police station are "private." This results in judicial removal of the word "private" from RCW 9.73.030 (1) and violates the principle that a statute should be read so as to give effect to all its terms. *State v. Lundquist,* 60 Wn.2d 397, 403,

---

[16]It should be observed that the court in *State v. Grant, supra,* understandably fails to dwell on the circumstances underlying its conclusion because the defendant played the recording to the jury after the trial court had excluded it and thus the use of the recording was found to be proper.

374 P.2d 246 (1962); *Greenwood v. Department of Motor Vehicles*, 13 Wn. App. 624, 536 P.2d 644 (1975). If the recording of all telephonic communication to a police station is to be prohibited, the statute should be amended by the legislature and not by the courts.

As previously noted, "private" communications to a police department may be recorded for limited purposes under RCW 9.73.090 (1). The statements of Senator Andersen appearing in the majority opinion were made in reference to this provision. His comments assume the private nature of the call and do not relate to RCW 9.73.030 (1) generally prohibiting the recording of "private" communications. Consequently, the comments are not pertinent to the central issue of whether a particular communication is "private."

Additionally, defendant contends that the tape-recorded conversation with the police operator violated her constitutional rights. Specifically, the defendant argues that the tape recording is inadmissible because it constitutes an invasion of her right to privacy by an unreasonable seizure in violation of the Fourth Amendment; and that the testimony of the police operator is likewise inadmissible as the conversation occurred without giving *Miranda* warnings to defendant. I find the defendant's position untenable.

As previously indicated, the defendant in the present circumstances had no reasonable expectation that her communication with the police was "private"; hence, she cannot claim that her right of privacy has been violated. Secondly, the police operator in this case was not required to warn the defendant of her *Miranda* rights because the defendant was not in custody and was making voluntary and spontaneous statements. As the court in *Miranda v. Arizona*, 384 U.S. 436, 478, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), noted:

> There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make.

Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

(Footnote omitted.)

I would affirm.

Petition for rehearing denied September 24, 1975.

Appealed to Supreme Court September 26, 1975.