[No. 1671–3. Division Three. February 23, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES MOORE, *Appellant.*

6

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

*Richard L. Cease* of *Spokane County Public Defender* and *Richard F. Ayres, Jr., Assistant,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *LeRoy Kinnie, Deputy,* for respondent.

GREEN, J.—Defendant appeals from a conviction of murder in the first degree.

Error is assigned to (1) the admission of defendant's confession; and (2) the refusal to permit response to a question on recross–examination. We affirm.

About 11:30 p.m. on June 1, 1975, Spokane police were notified of a shooting on West Main Street. Upon arrival at the scene, the officers found the victim lying at the top of a stairway on the second floor of an apartment building. He had been shot in the abdomen.

Before the shooting, the caretaker was awakened by the victim who asked, "You awake? Did you hear them shots?" and "Well, will you come out?" The caretaker dressed himself, obtained a flashlight, and entered the hallway. He immediately heard a gunshot and saw a flash through the front–door window, but did not see the victim. A few seconds later, the victim came in the front door of the building

and climbed the stairs holding his stomach. When he reached the second floor, he turned around and sat down. As the caretaker went out the front door to call the police, a shot was fired at him. He saw the defendant behind a post aiming a gun at him and two more shots were fired before the defendant disappeared.

The police arrived before the victim died. Two officers and a resident of the apartment building testified that upon inquiry as to who shot him, the victim answered, "James Moore." The victim then lapsed into unconsciousness and died.

Two other police officers proceeded to a residential area about 1 block from the shooting where defendant lived. As they approached defendant's cabin, he walked out of his door. The officers identified themselves, stopped him, checked him for weapons, and advised him of the shooting. The defendant was given his *Miranda* rights from a standard constitutional rights card which he then signed, acknowledging that it had been read to him, that he understood it, and was willing to answer questions. This occurred at 12:10 a.m. on June 2, 1975, as noted on the signed card. Although these officers did not know the victim's name, the defendant told them:

> He knew a subject up at that building and that he'd been shot by a subject who lived up there a month or two before, and that if there was a subject by the name of Miller [victim's name] up there that got shot—you know—it could have been anybody, because Miller had quite a few enemies; and if something had happened up there, they would probably try to hang it on him, because most of the people in the building had been trying to hang something on him for quite awhile.

Defendant was taken to the City–County Jail.

At 2:30 a.m. on June 2, defendant was interviewed by two other police officers. Prior to the interview, they read him his *Miranda* rights from a constitutional rights card which the defendant signed, acknowledging that he understood those rights, waived them, and was willing to answer questions. The time was noted on the card, and the interview

was conducted intermittently until about 4:30 a.m. Defendant denied any knowledge of the shooting, although he said that he knew the victim.

About 8:30 a.m., on June 3, two detectives interviewed the defendant. Before the interview, *Miranda* rights were read to defendant from a constitutional rights card which defendant signed, acknowledging that he understood those rights, waived them, and was willing to answer questions. At this time, he admitted shooting the victim. Thereafter, defendant was reinterviewed and his confession tape recorded.

During the recording, *Miranda* rights were again read to the defendant. Again, he acknowledged that he understood them, waived them, and was willing to answer questions. At the outset, defendant said that he and the victim had been arguing for some time and that 3 months earlier the victim shot him in the back. He then related that about 5 p.m. on June 1, 1975, while he was walking by the victim's apartment building on his way to a store, the victim "hollered at him and cussed him out and told him not to come around the place." On his way back from the store, the victim was still "popping off." Defendant stated that later that night he returned to the victim's apartment building with an old Smith & Wesson revolver. The victim came down the steps and into the street with his hand in his pocket, cussing the defendant. At that point, defendant said, "I shot him . . . one time." After the shooting, defendant stated, he ran back to his cabin and threw the revolver and the ammunition into the Spokane River. This tape–recorded statement was admitted into evidence and played to the jury.

According to expert testimony, the .38 caliber bullet taken from the victim's body could have been fired from a Smith & Wesson revolver. The shot that killed the victim came from close range, approximately 1 foot. The jury returned a verdict of guilty of murder in the first degree.

First, defendant contends that the tape–recorded confession should have been suppressed because he was not afforded a preliminary appearance "without unnecessary

delay" under JCrR 2.03(a)(1). We disagree. This rule provides:

> Any person arrested for any offense, including capital cases and other felonies and not released shall be taken without unnecessary delay before a judge. The term "without unnecessary delay" means as soon as practically possible. In any event, delay beyond the close of business of the judicial day next following the day of arrest shall be deemed unnecessary. The court may, for good cause shown and recited in the order, enlarge the time prior to preliminary appearance.

The sanction for failure to provide a preliminary appearance is set forth in the provisions of JCrR 2.03(c)(1):

> If a person arrested and not released is not afforded preliminary appearance within the time prescribed by section (a), including any enlargement, the court shall order such a person brought before the court forthwith, and in default thereof, the court shall order his immediate release, unless good cause to the contrary be shown.

It is clear that defendant received a preliminary appearance within the guidelines of this rule. He was arrested on June 2 (albeit at a very early hour) and was taken before the court for a preliminary appearance at 1:30 p.m. on June 3, *i.e.*, before the close of business on the second judicial day following his arrest. In *State v. Eastland,* 77 Wn.2d 823, 824, 467 P.2d 300 (1970), the court, in applying a former rule containing similar language to a situation where a defendant was held for 30 days without a preliminary appearance, said:

> As the appellant maintains, the arresting officer violated Criminal Rule for Justice Court 2.03(c)(3) and (d)(1), RCW vol. 0, when he failed to bring the appellant before a judge as soon as was reasonably practical. However, the appellant's remedy for that failure was to demand that he be arraigned or released, and no demand was made. Having failed to demand his right, he cannot now obtain a dismissal unless he can show that the delay was oppressive, arbitrary, or prejudicial.

(Citations omitted.) There is no evidence in the record of the CrR 3.5 hearing or at trial establishing that the delay

was oppressive, arbitrary, or prejudicial, nor is there evidence that the tape–recorded confession was in any way induced by the delay.

The defendant contends that the *McNabb–Mallory* rule, *McNabb v. United States,* 318 U.S. 332, 87 L. Ed. 819, 63 S. Ct. 608, (1943); *Mallory v. United States,* 354 U.S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356 (1957), applicable to federal courts, should be applied to violations of JCrR 2.03. Under the *McNabb–Mallory* rule, the failure to provide a preliminary appearance promptly after arrest operates to suppress an otherwise voluntary and valid confession. This rule has been expressly rejected in this state as reiterated in *State v. Hoffman,* 64 Wn.2d 445, 450, 392 P.2d 237 (1964):

> [D]efendant, in effect, again urges upon us the adoption of a rule of exclusion akin to the "McNabb rule" (*McNabb v. United States,* 318 U. S. 332, 87 L. Ed. 819, 63 S. Ct. 608 (1943)). Although we do not and will not abide the practice of holding persons for unreasonable times without charge and arraignment, we have heretofore refrained from adopting the *McNabb* rule of exclusion. Instead, we have relied upon the ultimate test of "voluntariness" in determining admissibility of confessions. *State v. Winters,* 39 Wn. (2d) 545, 236 P. (2d) 1038; *State v. Self,* 59 Wn. (2d) 62, 366 P. (2d) 193, cert. den. 370 U. S. 929, 8 L. Ed. (2d) 508, 82 S. Ct. 1569; *State v. Keating,* 61 Wn. (2d) 452, 378 P. (2d) 703; *State v. Carpenter,* 63 Wn. (2d) 577, 388 P. (2d) 537.
>
> It may well be that future developments, or a conviction that law enforcement agencies of the state are persistently indulging in undue and extensive delays between arrest and arraignment, may dictate a reconsideration of our position. Until that time, however, we adhere to our present approach.

(Footnote omitted.) *See also State v. Callas,* 68 Wn.2d 542, 545, 413 P.2d 962 (1966). We are bound by these decisions.

 It is obvious that the issues raised on this appeal and attendant expenses would have been eliminated had the defendant been afforded a preliminary appearance on June 2. However, in this state, timeliness of the preliminary

appearance is not the sole test for determining the admissibility of a confession. Here, the trial court entered findings supported by substantial evidence after a full hearing, and concluded the confession was voluntary. The record shows that on four occasions immediately prior to each interview, the defendant was informed of his rights, including the right to remain silent and the right to counsel. Each time he signed the card stating that he understood his rights, waived them, and was willing to answer questions. This was confirmed by the testimony of the officers involved. There is nothing in the record to indicate that the confession was untrue or given under circumstances amounting to coercion or that the delay in any way tainted the confession. Consequently, we find that the confession was properly admitted.

Although defendant argues that he was so dizzy from taking phenobarbitol that he could not recall giving the confession, it is evident from a reading of the transcribed confession that he was coherent, logical, and specific in his description of what occurred. There is nothing in the record to corroborate his claim that drugs affected his confession. Moreover, the officers involved were not even queried on this subject at the suppression hearing, and the evidence adduced at trial corroborates the material aspects of the confession.

Second, defendant contends the court erred in sustaining an objection to a question addressed to Detective Johnson on recross-examination. The question and colloquy was as follows:

Q On the 2nd of June, Detective Johnson, you knew Mr. Moore was in jail?
A Did I know he was in jail, sir?
Q Yes?
A Yes.
Q Do you know any reason why he wasn't taken from jail to Justice Court for a preliminary appearance on that day?
MR. KINNIE [Deputy Prosecuting Attorney]: I'm going to object to that as immaterial.
THE COURT: Sustained.

MR. AYRES [Public Defender]: I'll except to the ruling, your Honor. I think it is material; it goes to the voluntariness of the statement.

THE COURT: Your exception is noted.

We find no error.

Detective Johnson was initially called by the State to establish that certain photographs were accurate representations of the scenes depicted. On cross–examination, it was revealed that Detective Johnson was not present when some of the photographs were taken and did not see them until June 3. He then testified:

Q In fact, you didn't come into the case at all until when?

A The 3rd.

Later, Detective Johnson was recalled by the State and testified that he did not see the defendant until June 3, at the time of defendant's tape–recorded confession. It was not until this time on recross–examination that the question in issue was propounded.

■ It is well established that the latitude and extent of cross–examination lies within the discretion of the trial court and will not be disturbed in the absence of a showing of manifest abuse. *State v. Ingle,* 64 Wn.2d 491, 494, 392 P.2d 442 (1964); *State v. Sayward,* 66 Wn.2d 698, 404 P.2d 783 (1965); *State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 643, 512 P.2d 1049 (1973).

Assuming that the reason defendant was not given a preliminary appearance on June 2 is relevant, it is not within Detective Johnson's knowledge since he was not involved in the case until June 3. Additionally, because there is nothing in the direct, cross, or redirect examination of Detective Johnson that relates to the delay in preliminary appearance, the question is beyond the scope of the prior examination.

■ The contention that the question goes to the voluntariness of the confession is not well taken. Whether a confession is voluntary depends upon the state of mind of the accused, not the state of mind of the police officers, unless

their state of mind is evidenced by an overt act of coercion. Here, there was no such overt act.

Moreover, the refusal to permit the question did not foreclose defendant's pursuit of the voluntariness issue. It did not prevent inquiry of what was possibly said or done to the defendant that may have affected the voluntariness of his confession, nor was the defendant prevented from presenting evidence on the issue. However, no other witness was questioned nor was any evidence offered on this subject. Finally, since the defendant did not take the stand, the jury, in the circumstances presented, could not have passed upon the issue. *State v. Boyer,* 61 Wn.2d 484, 378 P.2d 936 (1963).

Neither did defendant make an offer of proof to apprise the court of the evidence which was to be developed by this line of inquiry. *See State v. Griffith,* 52 Wn.2d 721, 729–30, 328 P.2d 897 (1958); *Sutton v. Mathews,* 41 Wn.2d 64, 67, 247 P.2d 556 (1952); *State v. Pierce,* 175 Wash. 523, 535, 27 P.2d 1087 (1933); *State v. Danley,* 9 Wn. App. 354, 513 P.2d 96 (1973); *State v. Rakes,* 2 Wn. App. 833, 472 P.2d 399 (1970).

For all of the foregoing reasons, we find no abuse of discretion by the trial court in sustaining an objection to the question.

Affirmed.

Munson, C.J., concurs.

McInturff, J. (concurring in part and dissenting in part)—I am constrained to dissent from the opinion of the majority, for the trial court's refusal to resubmit the question of voluntariness of Mr. Moore's confession to the jury. The court invaded the province of the jury by withholding from them evidence upon which to judge the weight and credibility of the confession.

Mr. Moore has raised two principal assignments of error on appeal, the resolution of which I believe incorrect only as to the second. However, the majority has left important

14

matters without comment in their resolution of the first issue.

Mr. Moore first argues the court erred in admitting into evidence his confession obtained during detention but after that time at which preliminary appearance before a magistrate first became practically possible. Because he was not taken before a magistrate at the first practical time, he seeks suppression of his confession as a sanction against such failure.

For ease of reference, I requote JCrR 2.03(a):

(1) Any person arrested for any offense, including capital cases and other felonies and not released shall be taken without unnecessary delay before a judge. *The term "without unnecessary delay" means as soon as practically possible.* In any event, delay beyond the close of business of the judicial day next following the day of arrest shall be deemed unnecessary. The court may, for good cause shown and recited in the order, enlarge the time prior to preliminary appearance.

(2) The judge shall inform the person of the crime for which he is arrested and of the rights of a person charged with a crime and shall provide for pretrial release pursuant to JCrR 2.09.

(Italics mine.) JCrR 2.03(a) does provide that a person arrested for any offense shall be taken before a magistrate at the first practical time, so that he may be informed of the charge against him and of his *Miranda* rights.[1] As recognized by the rule, the first practical time may be the first regular judicial day after arrest, as in a weekend arrest. Beyond this point in time, police must justify their delay. But of necessity, the first practical time cannot be reduced to a mandatory hour limit. Practicality is a function of unique circumstances existing for the moment. Time limits of practical possibility are flexible, to be evaluated case by case. According to Holmes, "We must remember that the machinery of government would not work if it were not allowed a little play in its joints."[2]

---

[1]JCrR 2.03(a)(1) and (2).

[2]*Bain Peanut Co. v. Pinson,* 282 U.S. 499, 501, 75 L. Ed. 482, 51 S. Ct. 228 (1931).

But JCrR 2.03(a), requiring preliminary appearance of the accused at the first practical time, has no application in this case, for sanctions against violation of that rule do not include suppression of a confession made prior to preliminary appearance.[3] The exclusive standard for admissibility of a confession is voluntariness, and not the speed with which authorities present the accused for his preliminary appearance, as argued by Mr. Moore.[4] The length of detention and questioning prior to confession are relevant considerations in determining whether the confession was extracted by overbearance, in violation of the Fifth Amendment right against self–incrimination. But length of detention is only one circumstance which must be considered among a myriad of factors reflecting on voluntariness.[5]

On review, a finding by the trial court that a confession was voluntary and thus admissible will be affirmed when supported by substantial evidence of proof by a preponderance.[6] In this case, the trial court did find the confession voluntary, which finding is supported by substantial evidence and will not be disturbed.

In his second assignment of error, Mr. Moore argues the trial court erred in sustaining the State's objection to cross–examination of a detective concerning reasons why Mr. Moore was not brought before a magistrate at the first practical time:

Q Do you know any reason why he wasn't taken from

---

[3]JCrR 2.03(c)(1); *State v. Eastland*, 77 Wn.2d 823, 824, 467 P.2d 300 (1970); *State v. Winters*, 39 Wn.2d 545, 549, 550, 236 P.2d 1038 (1951).

[4]*State v. Sweet*, 71 Wn.2d 172, 177, 426 P.2d 983 (1967), *cert. denied*, 390 U.S. 968; *State v. Hoffman*, 64 Wn.2d 445, 450, 392 P.2d 237 (1964); *State v. Fullen*, 7 Wn. App. 369, 384, 499 P.2d 893 (1972).

[5]*See* Annot. 22 L. Ed. 2d 871, 878 (1970).

[6]*State v. Braun*, 82 Wn.2d 157, 162, 509 P.2d 742 (1973); *State v. Davis*, 73 Wn.2d 271, 284, 438 P.2d 185 (1968).

jail to justice court for a preliminary appearance on that day?

MR. KINNEY: I am going to object to that as immaterial.

THE COURT: Sustained.

It was error for the court to refuse such cross-examination.

Though it is the assigned office of the court to determine admissibility of a confession,[7] the issue of voluntariness may be resubmitted by the accused to the jury as it reflects upon the weight and credibility of the confession.[8] Evidence of extended detention and interrogation prior to confession is relevant to the issue of voluntariness, and could be properly pursued in questioning of the detective.[9]

The court's evidentiary ruling withheld from the jury's consideration substantial evidence reflecting upon the weight and credibility of Mr. Moore's confession. The record from a prior suppression hearing shows the accused to have been arrested near 12 a.m., Monday, June 2, 1975. After being given repeated *Miranda* warnings, he was interrogated by police detectives and later by a psychiatrist, was subjected to a polygraph examination, was reinterrogated, and finally confessed at 8:20 a.m., Tuesday, June 3, 1975. His confession was made after consistent denials of guilt, and without benefit of counsel.[10] Mr. Moore was thus subjected to a 32-hour period of detention before his confession.

---

[7]CrR 3.5(a); *State v. Myers,* 86 Wn.2d 419, 425, 545 P.2d 538 (1976).

[8]CrR 3.5(d)(4) states: "[I]f the defense raises the issue of voluntariness under subsection (1) above, the jury shall be instructed that they may give such weight and credibility to the confession in view of the surrounding circumstances, as they see fit." *See also State v. Piche,* 71 Wn.2d 583, 588, 430 P.2d 522 (1967), *cert. denied,* 390 U.S. 912; *State v. Fullen,* 7 Wn. App. 369, 385, 499 P.2d 893 (1972); *State v. Smith,* 72 Wn.2d 479, 485, 434 P.2d 5 (1967); *State v. Cuzzetto,* 76 Wn.2d 378, 387, 457 P.2d 204 (1969).

[9]*See* Annot. 22 L. Ed. 2d 871, 878 (1970).

[10]*See* CrR 3.1(c)(1) and (2).

When objection to witness examination is sustained at trial, it becomes incumbent upon the examiner to fairly advise the court of evidence which he expects to develop from the witness and thus to afford the court an opportunity to correct possible error, in order to preserve that error on appeal.[11] In this case, defense counsel did make an offer of proof:

I'll except to the ruling, your Honor. I think it is material; it goes to the voluntariness of the statement.

By advising the court of his desire to resubmit the issue of voluntariness to the jury, defense counsel did make an offer of proof sufficient to preserve the court's erroneous ruling for consideration by this court.

The critical question remains, whether the trial court's refusal to resubmit the issue of voluntariness to the jury constituted reversible error. Reversible error may be defined as one which affects or presumptively affects the final result of the trial.[12]

In addition to the confession, the jury heard other competent evidence, including a dying declaration in which the victim identified Mr. Moore as his assailant. Such evidence is persuasive of guilt and may have led the jury to such a conclusion, even in the absence of the confession. But I am unable to say that no other rational conclusion could be reached. I am unable to say from the record that Mr. Moore "would or would not have been convicted but for the error committed by the trial court. . . ."[13] Therefore, the error may not be deemed harmless, and requires the guilty verdict be set aside and Mr. Moore be granted a new trial.[14]

---

[11]*State v. Stambach*, 76 Wn.2d 298, 302–03, 456 P.2d 362 (1969); *State v. Danley*, 9 Wn. App. 354, 357, 513 P.2d 96 (1973).

[12]*State v. Mack*, 80 Wn.2d 19, 21–22, 490 P.2d 1303 (1971); *State v. Wanrow*, 14 Wn. App. 115, 120, 538 P.2d 849 (1975).

[13]*State v. Martin*, 73 Wn.2d 616, 627, 440 P.2d 429 (1968).

[14]*Schneble v. Florida*, 405 U.S. 427, 432, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972); *Chapman v. California*, 386 U.S. 18, 23–24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).

18

I would reverse and remand for new trial.