IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32354-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| E.G.,† | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — A juvenile was convicted of second degree dealing in depictions of a minor engaged in sexually explicit activity for texting a picture of his erect penis to an adult female. We conclude that the statute does cover this conduct and affirm the juvenile court disposition.

## FACTS

E.G. began sending harassing phone calls to T.R., a former employee of E.G.'s mother. T.R. at the time was a 22-year-old mother of an infant daughter. E.G. found T.R.'s telephone number by checking his mother's business records.

Beginning in mid-2012, a male using a restricted phone number would call T.R. at night and make sexual sounds or ask sexual questions. On the afternoon of June 2, 2013, T.R. received two text messages: one with a picture of an erect penis, and the other with

---

† For purposes of this opinion, the juvenile's initials are used in place of his name.

the message, "Do u like it babe? It's for you [T.R.]. And for Your daughter babe." T.R. reported the phone calls and text messages to the police, who tracked the telephone to E.G., then age 17. He was questioned by the police and told them that it was his penis in the photograph.

Shortly before his 18th birthday, E.G. was charged in the juvenile division of the Spokane County Superior Court with one count of second degree dealing in depictions and one count of making harassing telephone calls. The court soon thereafter entered an order extending the juvenile court's jurisdiction. E.G. also was then currently serving a Special Sex Offender Dispositional Alternative (SSODA) as the result of an earlier adjudication for communicating with a minor for immoral purposes.

The defense eventually moved to dismiss the charges on two bases, including an argument that the dealing in depictions statute could not be applied to a minor who was also the "victim" of the offense. The trial court denied the motion and the parties promptly reached a disposition. The parties stipulated to the facts of the dealing in depictions charge, stipulated to revocation of the current SSODA due to failure to make progress in treatment, and agreed to dismiss the telephone harassment count and unrelated pending counts of indecent exposure.[1] The trial court concluded E.G. had committed the offense of second degree dealing in depictions of a minor engaged in

---

[1] E.G. was allegedly masturbating on a bus on his way to school.

sexually explicit conduct. The trial court imposed a mitigated[2] sentence of time served and required him to register as a sex offender.

E.G. then timely appealed. This court accepted an amicus brief jointly filed by the American Civil Liberties Union of Washington and the Juvenile Law Center. The parties subsequently presented oral argument to a panel of this court.

## ANALYSIS

The only issue in this appeal is whether the dealing in depictions statute properly could be applied to E.G.'s conduct. He argues that the statute is unconstitutional under both the First and Fourteenth Amendments to the United States Constitution.[3] Amici reprise E.G.'s trial court argument that the statute should be interpreted in a manner that permits a juvenile to distribute sexually explicit pictures of himself. We address the three arguments in the order noted.

The statute in question is RCW 9.68A.050(2)(a), which defines the offense of second degree dealing in depictions of minors engaged in sexually explicit conduct. It states:

> A person commits the crime of dealing in depictions of a minor engaged in sexually explicit conduct in the second degree when he or she:
>   (i) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells any visual or printed

---

[2] E.G. suffers from Asperger's syndrome, which the trial court found to play a significant part in the failure of treatment.

[3] E.G. also argues that the evidence was insufficient to support the conviction if his behavior was constitutionally protected expression. Since we reject his constitutional arguments, we need not independently consider this argument.

matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4)(f) or (g); or

(ii) Possesses with intent to develop, duplicate, publish, print, disseminate, exchange, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4)(f) or (g).

The only definition referenced in the statute that has application to this case is found in RCW 9.68A.011(4)(f). That statute defines "[s]exually explicit conduct" to include:

Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer.

*Id.*

We now consider the challenges raised, turning initially to the First Amendment argument set forth by E.G.

*First Amendment*

E.G. argues that his conduct was protected by the First Amendment. Specifically, E.G. argues that his transmission of the photograph was protected, expressive conduct and that in prohibiting self-produced depictions, the statute sweeps too broadly, rendering it unconstitutional. However, minors have no superior right to distribute sexually explicit materials involving minors than adults do.

In determining the constitutionality of a statute, this court starts with a presumption that the statute is constitutional and reviews challenges de novo. *Lummi*

4

*Indian Nation v. State*, 170 Wn.2d 247, 257-58, 241 P.3d 1220 (2010). A party may challenge the constitutionality of a statute as applied in the specific context of that party's actions, or alternatively may facially challenge the statute as unconstitutional in all of its applications. *City of Redmond v. Moore*, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004). To prevail on the former, the party must show a violation of a constitutional right. *Id.* To prevail on the latter, the party must show that no set of circumstances exists in which the statute can be constitutionally applied. *Wash. State Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 282 n.14, 4 P.3d 808 (2000). Holding a statute to be unconstitutional as applied will prevent future application of that statute in similar circumstances, while holding a statute facially unconstitutional renders it totally inoperative. *Id.*

Because of the important rights protected by the First Amendment, a party may challenge a statute on its face as being overbroad regardless of whether that party's rights are affected. *State v. Motherwell*, 114 Wn.2d 353, 370-71, 788 P.2d 1066 (1990). "A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities." *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989). While it is inherently "dangerous" to regulate any form of expression, certain categories of expression are exempt from First Amendment protections. *New York v. Ferber*, 458 U.S. 747, 754-55, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982). One such category is child pornography. In light of the State's interest in safeguarding the physical and

psychological well-being of minors, the United States Supreme Court determined that *all* child pornography is exempt from First Amendment protection. *Id.* at 764-65; *see also State v. Luther*, 157 Wn.2d 63, 70-71, 134 P.3d 205 (2006).

E.G. argues that the goal of protecting minors from abuse and exploitation is not served by prohibiting self-produced child pornography. Consequently, he contends that self-produced child pornography should be excluded from the exemption. However, one of the primary purposes of child pornography statutes is to restrict the distribution network for child pornography in order to eliminate the market for producing the materials. *Ferber*, 458 U.S. at 759. Exempting self-produced images simply affords putative child pornographers the opportunity to purchase child pornography directly from voluntary, consenting minors, or else encourages minors to produce and market their own child pornography. Such exemptions would significantly frustrate efforts to combat child pornography.

An exemption for minors would also constitute a significant expansion of their First Amendment privileges in this area. States are permitted to prohibit the sale to minors of non-obscene sexually-oriented materials that can be sold to adults. *Ginsberg v. New York*, 390 U.S. 629, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968) (upholding New York ban on sale of "girlie" magazines to those under 17). If the First Amendment does not require a minor to have access to non-obscene materials that are available to adults, it does not afford them a privilege to produce or distribute sexually explicit materials.

6

The First Amendment does not consider child pornography a form of protected expression. There is no basis for creating a right for minors to express themselves in such a manner, and, therefore, no need to place a limiting construction on a statute that does not impinge on a constitutional right. Accordingly, we conclude that the dealing in depictions of minors statute does not violate the First Amendment when applied to minors producing or distributing sexually explicit photographs of themselves.

*Vagueness*

E.G. next contends that the dealing in depictions statute is vague because it does not provide notice that sending self-produced images of one's own genitalia to others is included within the scope of the statute. While the statute's reach may be broad, it is not vague.

"Under the Fourteenth Amendment, a penal statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *O'Day v. King County*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988). Moreover, "where First Amendment freedoms are at stake a greater degree of specificity and clarity of purpose is essential." *Id.* The vagueness doctrine serves both "to provide citizens with fair warning of what conduct they must avoid" and protect from arbitrary law enforcement. *State v. Halstien*, 122 Wn.2d 109, 116-17, 857 P.2d 270 (1993). E.G. contends that the dealing in depictions statute fails

7

both prongs of the vagueness test because a minor would not know that it applied to pictures he had taken of himself.

The problem with this argument is that it is made without reference to any language in the statute. Rather, he has essentially argued that an ordinary person would not expect sending a picture of himself to be covered under the crime of dealing in child pornography. However, the language of the statute is plain and not vague. It prohibits "a person" from disseminating sexually explicit pictures of "a minor." RCW 9.68A.050(2)(a). Nothing in the text of the statute suggests that there are any exceptions to its anti-dissemination or anti-production language. The statute is aimed at eliminating the creation and distribution of images of children engaged in explicit sexual behavior. It could hardly be any plainer and does not remotely suggest there is an exception for self-produced images.

E.G. also contends that the statute is vague because 20 percent[4] of teenagers allegedly engage in "sexting," the transmission of sexually suggestive or explicit

---

[4] E.G. cites a survey conducted in 2008 by The National Campaign to Prevent Teen and Unplanned Pregnancy, *Sex and Tech: Results from a Survey of Teens and Young Adults* 1, http://denp9zinex7nzb.cloudfront.net/sites/default/files/resouce-primary-download/sex_and_tech_summary.pdf. That same source three years later noted in a blog entry that a new study conducted in 2011 showed that the actual number might only be two percent had "sexted" and discussed methodological differences between the two surveys. Bill Albert, *Sexting Redux*, NAT'L CAMPAIGN TO PREVENT TEEN & UNPLANNED PREGNANCY (Dec. 6, 2011), http://thenationalcampaign.org/blog/sexting-redux. The new study in question was created by the University of New Hampshire Crimes Against Children Research Center and published in *Pediatrics*. KimberlyJ. Mitchell et al.,

photographs via cell phone,[5] and therefore could be subject to prosecution. His

argument, even if the facts supported the claim, is irrelevant. The fact that a large

number of people do something is not the test of whether police or prosecutors arbitrarily

enforce a law, nor does not tell us whether it is vague. If a large number of people,

especially those charged with enforcing the law, do not understand what a statute means,

then the law may be vague and subject to arbitrary enforcement, leading to its demise as a

matter of due process. But ignorance of a law is not the same as ignorance of the

meaning of a law. The fact that minors may not appreciate they are breaking a law is not

proof that they do not understand it.

But, the test of vagueness is whether an *ordinary person* would understand the

meaning of the statute. *Halstien*, 122 Wn.2d at 117. It is the burden of the challenger to

establish that the statute is vague. *Id.* at 118. E.G. does not attempt to meet that burden

in this appeal. He can point to no ambiguity in the text nor otherwise show that the

statute is not understandable. It does not bear the interpretation he desires, but it is not

for that reason unconstitutionally vague.

---

*Prevalence and Characteristics of Youth Sexting: A National Study*, 129 PEDIATRICS 13
(2012). The New Hampshire study suggested that less than two percent of teens had sent
pictures of explicit images, while nearly ten percent had been involved with sexually
suggestive images. *Id.* at 18. It also noted that transmission of sexually explicit pictures
constituted criminal behavior, leading to the need to inform teens of the issue and of
creating less draconian methods of addressing the problem. *Id.* at 18-19.

[5] http://www.merriam-webster.com/dictionary/sexting (last visited June 7, 2016).

No. 32354-4-III
*State v. E.G.*

The vagueness argument is without merit.

*Statutory Construction*

Amici argue, for factual considerations similar to those made by E.G. and for policy reasons discussed briefly below, that the dealing in depictions statute should be interpreted to exclude minors who send pictures of themselves, thereby ensuring that sexting does not fall within the reach of the statute. This, however, is not a sexting case—and we do not opine on whether the dealing in depictions statute would apply to a minor sending a picture of herself to a willing minor recipient—and the statute simply does not bear the construction the amici would give it.[6]

The terms of the statute are clear—"[a] person" who disseminates sexually explicit photographs of "a minor" violates the statute. Like E.G., the amici do not argue that there is any ambiguity in the terms of the statute. Instead, pointing to the statement of intent adopted by the legislature, they argue that it is not rational that E.G. can both be the victim of the offense and the perpetrator. There are a couple of problems with that argument.

_____

[6] Appellate courts do not typically address issues raised only by an amicus. *E.g.*, *Long v. Odell*, 60 Wn.2d 151, 154, 372 P.2d 548 (1962). Here, however, the amici are raising the same issue argued by E.G. to the trial court, and counsel for E.G. at oral argument expressly indicated that her client joined the argument. Since the State did answer the argument in its response to the amici, it is not unfair to any party to address the claim. The issue is properly before us.

10

Although there is no ambiguity in the statute that would require a reviewing court to construe the statute with regard to legislative intent, the amici properly nonetheless note that statutes should be interpreted to avoid absurd results. *E.g., Five Corners Family Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011).[7] They argue that it would be absurd for E.G. to be both victim and perpetrator. We disagree. First, nothing in the statute requires proof of any specific "victim" status as an element of the offense. Rather, child pornography per se victimizes children, which is the reason the legislature is seeking to eradicate it, whether or not the child willingly takes part.[8] The legislature can rationally decide that it needs to protect children from themselves by eliminating all child pornography, including self-produced images that were not created for commercial reasons.[9]

The second reason that this is not a case of innocent sharing of sexual images between teenagers. It appears, instead, to be the latest step in a campaign of anonymous

---

[7] Although it is important to avoid absurd consequences, this doctrine is applied sparingly. *Five Corners*, 173 Wn.2d at 311.

[8] Even if typical sexting initially is treated as innocent activity, there is still a significant risk of harm when one of the recipients subsequently shares the images with others, whether the new recipients are peers or adults. The studies noted *supra* note 4 show that further transmission of shared images to others is a common occurrence and an easy way to misuse "innocent" sharing to victimize a minor.

[9] There are many circumstances where the legislature uses the criminal law to restrict the ability of minors to harm themselves or other minors, including the laws against child rape and molestation, as well as the use of alcohol by minors. *See, e.g.,* RCW 9A.44.073-.089; RCW 66.44.270(2).

11

harassment of T.R. for reasons best known to E.G., but even if it was an effort to entice or impress her, this was not an innocent activity. For this reason, most of the amici policy arguments simply are not applicable here. Furthermore, since E.G. was already a registered sex offender with an obligation to report, there is no danger that he was being subject to public opprobrium through an innocent mistake. Similarly, he was already undergoing, albeit unsuccessfully, sex offender treatment through the rehabilitative auspices of the juvenile court. Further prosecution in juvenile court for the messages sent to T.R. did not undercut the rehabilitation efforts underway there; indeed, prosecution of this case as a dealing in depictions charge may have been the only way to keep him before the juvenile court. E.G. did not succeed due to his own behavior and his own challenges. The prosecution of this case did not undercut the therapeutic ideals of juvenile court.

Amici make a strong policy argument that sexting cases should not be treated under the dealing in depictions statute. The prosecutor agreed at oral argument that prosecutors typically would not charge such cases under that law. Since this was not a sexting case, this court need not weigh in on that issue now. But if this statute needs to be amended to ensure that policy—or some other statute needs to be enacted to address the problem, then the legislature is the body that must act. Amici's policy arguments are best addressed to that body.

12

No. 32354-4-III
*State v.* E.G.


  Accordingly, we affirm the juvenile court's adjudication and disposition of this

case.

WE CONCUR:

_____   _____
               Korsmo, J.

_____   _____
  Siddoway, J.         Pennell, J.

13