

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 14 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Sept 14, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 93609-9 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| ERIC D. GRAY, | ) | |
| | ) | Filed ___SEP 14 2017___ |
| Petitioner. | ) | |
| | ) | |

OWENS, J. — When he was 17 years old, Eric D. Gray electronically sent an unsolicited picture of his erect penis to an adult woman. The woman contacted the police, and Gray was charged with and convicted of one count of second degree dealing in depictions of a minor engaged in sexually explicit conduct under RCW 9.68A.050. He appealed, claiming the plain language of the statute does not anticipate minors who take and transmit sexually explicit images of themselves.

RCW 9.68A.050 prohibits developing or disseminating sexually explicit images of minors. On its face, this prohibition extends to any person who disseminates an image of any minor, even if the minor is disseminating a self-

produced image. Because the statute is unambiguous, we take it on its face and find that Gray's actions are included under the statute. We further find that the statute does not infringe Gray's First Amendment rights, nor is it unconstitutionally vague. *See* U.S. CONST. amend. I. Therefore, we affirm the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

In 2013, T.R., a 22-year-old woman, went to the Spokane County Sheriff's Office to report a series of harassing phone calls she had received over the past year. She stated that the caller used a restricted number and would not provide a name, but that she believed the caller was male. She also stated that she believed the caller was Gray.

T.R. also reported that she had received two text messages the day before. The first contained a photograph of an erect penis and the words "(Eric Gray) picture message sent from Pinger." Clerk's Papers at 59. The second message read, "'Do u like it babe? It's for you [T.R.]. And for Your daughter babe-Sent From TextFree!'" *Id.* Using the phone number associated with the messages and additional information from the user's Pinger account, the Spokane County Sheriff's Office confirmed the messages came from Gray.

About two weeks later, the deputy who took T.R.'s report went to Gray's house to question him. Gray was 17 at the time and lived with his parents. He had been diagnosed with Asperger's syndrome and had a prior adjudication requiring him to

2

register as a sex offender. Though initially composed during questioning and believing the sheriff had come to talk with him about his sex offender registration, Gray's demeanor quickly became agitated when he learned the deputy's actual purpose. He admitted that he had been calling T.R. for the past year and had sent the text messages. He stated that T.R. used to work for his mother, that he retrieved T.R's phone number from his mother's business records, and that he was attracted to T.R. He also admitted that it was his erect penis in the photograph.

The State charged Gray in juvenile court with one count of second degree dealing in depictions of a minor engaged in sexually explicit conduct under RCW 9.68A.050. It also charged him with one count of telephone harassment under RCW 9.61.230. Gray moved to dismiss both charges for insufficient evidence, which the trial court denied.

In a stipulated facts trial, the court found Gray guilty of the second degree dealing in depictions of a minor charge. The State agreed to dismiss the telephone harassment charge and chose not to charge him with two counts of misdemeanor indecent exposure stemming from an unrelated incident. He was sentenced to 150 hours of community service, 30 days of confinement, and fees, before being released with credit for time served. He was again ordered to register as a sex offender.

Gray appealed to Division Three of the Court of Appeals, which affirmed his adjudication. *State v. E.G.*, 194 Wn. App. 457, 377 P.3d 272 (2016). It found that

"[t]he legislature can rationally decide that it needs to protect children from themselves by eliminating all child pornography, including self-produced images that were not created for commercial reasons." *Id.* at 468. The court also suggested that this case was distinguishable from a "case of innocent sharing of sexual images between teenagers" and so declined to analyze such a situation. *Id.* Because of this, it found that the statute anticipated Gray's actions and that the statute did not violate either the federal or state constitutions.

Gray petitioned this court for review, which was granted. *State v. Gray*, 187 Wn.2d 1001, 386 P.3d 1082 (2017). The American Civil Liberties Union of Washington, the Juvenile Law Center, Columbia Legal Services, and TeamChild subsequently filed a joint brief as amici curiae.

## ISSUES

1.     Does RCW 9.68A.050 allow the State to prosecute a minor for taking and distributing a sexually explicit photo of himself?

2.     Is RCW 9.68A.050 impermissibly overbroad or vague in violation of the federal or state constitutions? *See* U.S. CONST. amends. V, XIV.

## STANDARD OF REVIEW

The first issue here is whether the statute on its face applies to Gray. We review questions of statutory interpretation de novo. *State v. Bunker*, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010) (citing *City of Spokane v. Spokane County*, 158 Wn.2d 661,

4

672-73, 146 P.3d 893 (2006)). Whether the statute permits prosecution of a minor taking and transmitting a sexually explicit image of himself is a question of first impression in this court.

## ANALYSIS

We must first determine whether a "person" under the dealing in depictions of a minor statute can also be the "minor" depicted in the images. If so, we must then determine whether the statute is overbroad in violation of the First Amendment free speech guaranty or whether the statute is unconstitutionally vague.

1. *Gray's Actions Fall under the Dealing in Depictions of a Minor Statute*

This court's duty is to "give effect to the Legislature's intent." *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992) (citing *Wash. Pub. Power Supply Sys. v. Gen. Elec. Co.*, 113 Wn.2d 288, 292, 778 P.2d 1047 (1989)). The clearest indication of legislative intent is the language enacted by the legislature itself. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010) (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). Therefore, "if the meaning of a statute is plain on its face, we 'give effect to that plain meaning.'" *Id.* (internal quotation marks omitted) (quoting *Jacobs*, 154 Wn.2d at 600). However, we will not read a statute in isolation; we determine its plain meaning by taking into account "the context of the entire act" as well as other related statutes. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d

1003 (2014) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

### A. The Plain Language of the Statute Prohibits Transmitting Sexually Explicit Images of a Minor Even If the Minor Himself Sent It

Here, the statute is unambiguous and we give it its plain meaning. RCW 9.68A.050 prohibits dealing in depictions of a minor engaged in sexually explicit conduct. In relevant part, it states that "[a] person commits the crime of dealing in depictions of a minor engaged in sexually explicit conduct in the second degree when he or she . . . [k]nowingly develops, . . . publishes, . . . [or] disseminate[s] . . . any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct . . . ." RCW 9.68A.050(2)(a). "Sexually explicit conduct" is a depiction "of the genitals or unclothed pubic or rectal areas of any minor . . . for the purpose of sexual stimulation of the viewer." RCW 9.68A.011(4)(f). A "minor" is "any person under eighteen years of age." RCW 9.68A.011(5). Finally, a "person" is any "natural person," whether an adult or a minor. RCW 9A.04.110(17), .090. Therefore, when any person, including a juvenile, develops, publishes, or disseminates a visual depiction of any minor engaged in sexual conduct, that person's actions fall under this statute's provisions.

Under this statute, the State properly charged Gray for his actions. When he was 17, Gray took a photo of his erect penis and sent it, unsolicited, to another person.

Gray is a "natural person" and therefore a person for purposes of the statute. He was also under the age of 18, making him a minor under the statute as well. He stated he was attracted to T.R., and when he sent the picture he included the phrase "Do u like it, babe?," indicating an attempt to arouse the recipient. The picture he transmitted was, therefore, a visual depiction of a minor engaged in sexually explicit conduct because it was a picture of a minor's genitals designed to sexually stimulate the viewer. This falls squarely within the statute's plain meaning.

Gray argues that he cannot be charged under this statute because the "person" and the "minor" must be two different people. He states that had the legislature intended to include the depicted minor under the definition of "person," it would have explicitly done so. We disagree.

As noted above, a "person" is any natural person and a "minor" is merely a person who is not yet 18. RCW 9A.04.110(17); RCW 9.68A.011(5). Under this statute, there is nothing to indicate the "minor" cannot also be the "person." Contrary to Gray's arguments, we find that had the legislature intended to *exclude* the depicted minor from the definition of "person," it would have done so as it has in other sections in this chapter. *See* RCW 9.68A.101(3)(a) (specifically excluding minors receiving compensation for sexual conduct from the definition of a "person" guilty of promoting commercial sexual abuse of a minor). Because the legislature has not excluded

7

minors from the definition of "person" here, Gray was properly charged under this statute.

Both Gray and amici urge that if we determine a minor can be charged under this statute for taking and disseminating sexually explicit pictures of himself, it could have dire consequences for other minors engaging in "sexting." They argue that the legislature never intended to criminalize teenagers consensually exchanging sexually explicit photographs, opining that doing so would be an impermissible infringement of those teenagers' First Amendment freedom of expression.

Though both parties and amici have briefed the issue, those are not the facts before us. We understand the concern over teenagers being prosecuted for consensually sending sexually explicit pictures to each other. We also understand the worry caused by a well-meaning law failing to adapt to changing technology. But our duty is to interpret the law as written and, if unambiguous, apply its plain meaning to the facts before us. Gray's actions fall within the statute's plain meaning. Because he was not a minor sending sexually explicit images to another consenting minor, we decline to analyze such a situation.

The statute here is unambiguous. A "person" is any person, including a minor. Images of a "minor" are images of any minor. Nothing in the statute indicates that the "person" and the "minor" are necessarily different entities. Therefore, the photographer or distributor may also be the minor in the photograph. Because of this,

8

Gray was properly charged with taking and disseminating sexually explicit images of a minor.

### B. The Legislature's Findings Support Our Plain Reading of the Statute

The legislative findings support our plain reading. As noted above, our paramount duty is to effectuate the legislature's intent. *Elgin*, 118 Wn.2d at 555. We will diverge from a plain reading only if a "'contrary legislative intent is indicated.'" *State v. Jones*, 172 Wn.2d 236, 242, 257 P.3d 616 (quoting *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)).

Gray argues that the legislature intended to focus on adult purveyors of child pornography, not juveniles who voluntarily take photographs of their own bodies. He cites to the legislative findings, stating that when the legislature "drafted the statute it was concerned about holding individuals who engage in the sexual abuse of children for their own commercial gain criminally accountable." Suppl. Br. of Pet'r at 9-10 (citing RCW 9.68A.001). We agree that this statute was undoubtedly intended to address the sexual abuse and exploitation of children by adults. However, the scope of this statute is larger than what Gray presents.

The legislature intended to destroy the blight of child pornography everywhere, from production of the images to commercial gain. As Gray notes, the State has a compelling interest in "protecting children from those who sexually exploit them." RCW 9.68A.001(2). However, "this interest extends to stamping out the vice of child

pornography at all levels in the distribution chain." *Id.* This includes at its inception. It is our duty to effectuate the legislature's intent, not rewrite the words the legislature used. If the legislature intended to exclude children, it could do so by amending the statute. *See* LAWS OF 2017, ch. 126, § 3 (amending RCW 9.68A.050 to a class B felony, but making no other alterations). Because the statute was intended to curtail production of child pornography at all levels in the distribution chain, the statute prohibits Gray's actions.

Similarly, the dissent contends that there is a "long-standing and well-accepted rule" that when a legislature enacts a criminal law to protect a specific class, we cannot interpret the law to permit prosecution of a member of that protected class "unless the legislature explicitly says so." Dissent at 13. But the dissent overgeneralizes, relying on cases that deal with coconspirator/accomplice/aider and abettor liability and factual scenarios entirely different from this one.

The cases cited by the dissent deal largely with accomplice or coconspirator liability, rather than an individual acting alone. *See Nigro v. United States*, 117 F.2d 624, 629 (8th Cir. 1941) (coconspirator liability); *United States v. Shear*, 962 F.2d 488, 493 (5th Cir. 1992) (employee aider and abettor liability). For example, in *Gebardi v. United States,* 287 U.S. 112, 53 S. Ct. 35, 77 L. Ed. 206 (1932), which the dissent discusses in detail, the Supreme Court addressed whether a woman who was trafficked for the purpose of prostitution could be held criminally liable for conspiring

with the trafficker. Additionally, in *City of Auburn v. Hedlund*, 165 Wn.2d 645, 652, 201 P.3d 315 (2009), the only Washington case cited by the dissent, we addressed accomplice liability: whether a passenger and sole survivor in a car accident could be charged as an accomplice to driving under the influence. But here, Gray was not acting as an accomplice, aider and abettor, or coconspirator; he acted on his own.

We acknowledge that an exception for victims may apply in other contexts: for example, for children involved in the *manufacture* of child pornography. Indeed, "[w]hen a crime inherently requires 'two to tango,' but the statute is not intended to punish the victim of the crime—as is the case in prostitution or the manufacture of pornography—federal courts regularly apply a common-law exception to conspiratorial or accomplice liability." *United States v. Daniels*, 653 F.3d 399, 413 (6th Cir. 2011); *see also* RCW 9A.08.020(5)(a) (crime victims exempt from accomplice liability). But this case is not about the manufacture of child pornography. It is about one individual's *distribution* of a sexually explicit image to an unwilling recipient. Contrary to the dissent's view, this court has not adopted a general presumption that all statutes designed to protect a particular class are presumed to exempt all members of that class from criminal liability, no matter the circumstances. The dissent paints with too broad a brush.

11

2. *The Statute Is Neither Unconstitutionally Overbroad Nor Unconstitutionally Vague*

Gray and amici both argue the statute impermissibly infringes on Gray's First Amendment freedom of speech guaranty, claiming it is overbroad and improperly curtails protected speech. They also assert that the statute is impermissibly vague because it opens the door to discriminatory application and does not effectively inform the public about proscribed conduct. We disagree with both assertions.

A. *The Statute Does Not Improperly Infringe on Gray's First Amendment Freedom of Expression*

Under the First Amendment, a statute is unconstitutionally overbroad if it prohibits a substantial amount of protected speech. *United States v. Williams*, 553 U.S. 285, 292, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). Thus, the first step in overbreadth analysis is to construe the challenged statute because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* at 293. The overbreadth doctrine is "'strong medicine'" and should be used with hesitation. *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39, 120 S. Ct. 483, 145 L. Ed. 2d 451 (1999) (internal quotation marks omitted) (quoting *New York v. Ferber*, 458 U.S. 747, 769, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982)). Though there are "'inherent dangers of undertaking to regulate any form of expression,'" the United States Supreme Court has recognized that some forms of expression are outside the protections of the First Amendment. *Ferber*, 458 U.S. at

755 (quoting *Miller v. California*, 413 U.S. 15, 23, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973)). Child pornography is one of these forms, and it can be constitutionally prohibited if "the conduct to be prohibited [is] adequately defined by the applicable state law, as written or authoritatively construed." *Id.* at 764.

Here, RCW 9.68A.050 adequately defines the criminal conduct, limiting itself to the production or distribution of child pornography. It will apply only to an individual who "[k]nowingly develops, . . . publishes, . . . [or] disseminates . . . [any] visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct . . . ." RCW 9.68A.050(1)(a)(1). Because this statute proscribes only child pornography and because child pornography does not enjoy First Amendment protections, the statute is not overbroad.

Nonetheless, Gray contends that his actions are unique from child pornography and, therefore, retain First Amendment protections. He concedes that *Ferber* placed child pornography outside the protections of the First Amendment. 458 U.S. at 764. However, he contends that *Ashcroft v. Free Speech Coalition* has since clarified that holding. 535 U.S. 234, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002).

In *Free Speech Coalition*, the Supreme Court struck down a law that banned sexually explicit depictions of minors, as well as depictions that *appeared* to be minors. *Id.* at 241. These included computer generated images and depictions of legal adults pretending to be minors. *Id.* The Court recognized that the First

13

Amendment "does not embrace certain categories of speech, including . . . pornography produced with real children." *Id.* at 245-46. However, the Court found the prohibition of images that appear to be, but are not actually, minors improper; any harm stemming from those false images "does not necessarily follow from the speech, but depends upon some unquantified potential for subsequent criminal acts." *Id.* at 250.

Gray claims his case is similar. Because a fabricated computer image of a minor does not involve an exploited child, it falls within traditional First Amendment protections. Consequently Gray argues that just as no children were exploited in *Free Speech Coalition*, no child was exploited here and his speech is entitled to First Amendment protections. He claims any potential harm in his case is just as attenuated and vague as *Free Speech Coalition*. Because no harm was done, he should have the same right as any adult to take voluntary photographs of his own body. We do not find this argument persuasive.

We find that RCW 9.68A.050 is not overbroad. It regulates only sexually explicit images of actual children, which is speech outside the protections of the First Amendment. Because Gray transmitted such an image, his actions do not fall under First Amendment protection. We affirm the Court of Appeals.

14

B. *The Statute Is Not Unconstitutionally Vague and Therefore Not Void for Vagueness*

Gray finally argues that RCW 9.68A.050 is void for vagueness under the Fourteenth Amendment to the federal constitution and article I, section 3 of our state constitution. He and amici argue that if a depicted minor can also be the "person" under this statute, it does not properly inform the public about what actions are prohibited. Further, it allows the State to pick and choose which minors may be held accountable under the statute. They voiced particular concern about teenagers consensually exchanging explicit material and whether they would fall under the statutes provisions. However, we find the statute not to be unconstitutionally vague.

A statute can be void for vagueness in two ways. First, the statute may "authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999). Second, the statute could "fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *Id.* The most important aspect of the vagueness doctrine is "'the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974)). We generally analyze due process claims under

article I, section 3 in the same way as vagueness claims under the Fourteenth

Amendment. *See State v. Jordan*, 180 Wn.2d 456, 462, 325 P.3d 181 (2014).

Here, the statute is not void for vagueness. First, it does not invite arbitrary and

discriminatory enforcement. Gray claims that because the State infrequently

prosecutes teenagers who send each other explicit images but chose to prosecute him,

it demonstrates arbitrary enforcement. However, the State is vested with great

discretion in determining how and when to file criminal charges. *State v. Korum*, 157

Wn.2d 614, 625, 141 P.3d 13 (2006) (plurality opinion). Gray presents no evidence

the State made the choice to charge Gray for an arbitrary or discriminatory purpose.

Second, the wording of the statute allows a reasonable person to understand

what conduct is prohibited. It states that "[a] person" will be guilty if they transmit

sexually explicit images of "a minor." RCW 9.68A.050(2). On its face, this includes

any person, even a minor taking a picture of himself. Our responsibility is to interpret

the law, not to write it, and here the law is clear.

Finally, Gray cannot bring a vagueness claim based on vagueness as applied to

others. *See Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489, 495, 102 S. Ct. 1186,

71 L. Ed. 2d 362 (1982). We understand the concern that the State will charge two

teenagers consensually exchanging sexually explicit images of themselves. However,

that circumstance is not before us. Our duty is to interpret the statute as applied to

Gray. Because we are limited to the facts in Gray's case, we decline to analyze

whether two teenagers could constitutionally be charged for exchanging explicit pictures.

## CONCLUSION

RCW 9.68A.050 is unambiguous and anticipates Gray's actions. The statute prohibits any person from developing or disseminating a sexually explicit image of any minor. Here, Gray sent a sexually explicit picture of himself to an adult woman. Because Gray is a person and because he sent a sexually explicit picture of himself while he was a minor, he was properly charged under the statute. Further, the statute does not unconstitutionally infringe on Gray's freedom of expression, nor is it unconstitutionally vague. Therefore, we affirm the Court of Appeals.

_____ Owens, J.

WE CONCUR:

_____ Fairhurst, C.J.

_____ Wiggins, J.

_____ Johnson, J.

_____ Madsen, J.

_____ Stephens, J.

No. 93609-9

GORDON McCLOUD, J. (dissenting)—The majority holds that RCW 9.68A.050 contains "nothing to indicate the 'minor' [who is exploited by depictions of him or her "engag[ing] in sexually explicit conduct"] cannot also be the 'person' [who is prosecuted for doing the exploiting]." Majority at 7; RCW 9.68A.060(2)(a).

I disagree. For more than 80 years, the United States Supreme Court, federal courts, and Washington courts have held that when the legislature enacts a statute designed for the protection of one class—here, children depicted in sexually explicit conduct—it shows the legislature's intent to protect members of that class from criminal liability for their own depiction in such conduct. *E.g., Gebardi v. United States*, 287 U.S. 112, 119, 53 S. Ct. 35, 77 L. Ed. 206 (1932); *City of Auburn v. Hedlund*, 165 Wn.2d 645, 652, 201 P.3d 315 (2009). RCW 9.68A.050 was enacted against that historical backdrop. It was specifically intended to protect children depicted in pornography. Since the legislature enacted RCW 9.68A.050 to protect those children, it necessarily follows that those children who are depicted and hence exploited are exempt from prosecution under RCW 9.68A.050 for such depictions of themselves.

1

Indeed, if the legislature wanted us to apply a different rule of statutory interpretation—one that would permit members of the protected class to be charged, prosecuted, convicted, and imprisoned for up to 10 years[1] for sexually explicit, exploitative depictions of their own bodies—it was the legislature's duty to explicitly say that they were departing from the general rule of statutory interpretation. The legislature did not say so here. Its silence must be construed as an endorsement of the general rule.

The majority's contrary interpretation of the statutory language produces absurd results. The majority's interpretation punishes children who text sexually explicit depictions of their own bodies to adults far more harshly that it punishes adults who do the same thing. It punishes children who text such depictions of their own bodies to adults even more harshly than adults who text such sexually explicit photos to children. It even punishes the child who is groomed and led into taking such photos and forwarding them to the grooming adult! In short, the majority's interpretation punishes the most vulnerable participant—the depicted child—no

---

[1] As the State points out, the legislature recently amended RCW 9.68A.050 to reclassify second degree dealing in depictions of a minor engaged in sexually explicit conduct from a Class C felony to a Class B felony. LAWS OF 2017, ch. 126, § 3. Class C felonies are punishable by up to 5 years in prison and/or $10,000 in fines; class B felonies are punishable by up to 10 years in prison and/or $20,000 in fines. RCW 9A.20.021(1)(b), (a).

2

matter what personal pressures or personal demons (Gray suffers from Asperger's

syndrome) compelled the child to do it.

That cannot be what the legislature intended. I therefore respectfully dissent.

ANALYSIS

I.     THE PLAIN LANGUAGE OF RCW 9.68A.050, READ IN CONTEXT, DOES NOT
       PENALIZE THE CLASS OF PERSONS—MINORS DEPICTED IN
       PORNOGRAPHY—WHOM THE STATUTE WAS DESIGNED TO PROTECT

   A. The Purpose of RCW 9.68A.050 Is To Protect Children from Sexual
      Exploitation by Depiction in Pornography

As the majority notes, "This court's duty is to 'give effect to the legislature's

intent.'" Majority at 5 (quoting *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314

(1992)). To determine that intent, we begin with the language of the statute. *State

v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015). The statute under which Eric

Gray was convicted, RCW 9.68A.050(2)(a), provides in relevant part:

> *A person* commits the crime of dealing in depictions of a minor
> engaged in sexually explicit conduct in the second degree when he or
> she:
>
> (i) Knowingly develops, duplicates, publishes, prints,
> disseminates, exchanges, finances, attempts to finance, or sells any
> visual or printed matter that depicts a minor engaged in an act of
> sexually explicit conduct as defined in RCW 9.68A.011(4) (f) or (g) . .
> . .

(Emphasis added.) As the majority correctly notes, this statute lacks an explicit

textual limit on what "person" may be prosecuted for exploiting "a minor."

3

But we do not stop with statutory language. Our duty is to figure out the legislature's intent, so we read that language in context to determine its meaning. *Larson*, 184 Wn.2d at 848 (quoting *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)). And we presume that the legislature is familiar with existing rules of statutory interpretation. *State v. Varnell*, 162 Wn.2d 165, 171, 170 P.3d 24 (2007) (citing *State v. Bobic*, 140 Wn.2d 250, 996 P.2d 610 (2000)); *see also Warmington v. Emp't Sec. Dep't*, 12 Wn. App. 364, 367, 529 P.2d 1142 (1974).

Here, the statutory context shows that RCW 9.68A.050(2)(a) was enacted to protect "minor[s]" from sexual exploitation via depiction in pornography. Chapter 9.68A RCW is titled "Sexual Exploitation of Children." RCW 9.68A.001 explicitly states that legislative intent: "the prevention of sexual exploitation and abuse of children" and "the protection of children from sexual exploitation." It focuses on prosecuting those who gain from exploiting such depicted children: it is intended "to hold those who pay to engage in the sexual abuse of children accountable for the trauma they inflict on children." RCW 9.68A.001. That "Legislative findings, intent" section further clarifies that "[t]he state has a compelling interest in protecting children from those who sexually exploit them . . . ." RCW 9.68A.001(2). The majority agrees: "We agree that this statute was undoubtedly intended to address the sexual abuse and exploitation of children by adults." Majority at 9. So,

4

while the legislature also intended to "'stamp[] out the vice of child pornography at all levels in the distribution chain,'" *id.* (quoting RCW 9.68A.001(2)), the tool it chose was a statute that protects a particular class: minors vulnerable to sexual exploitation by their depiction in sexually explicit conduct. Gray is a member of that protected class. The legislature wrote this statute to protect him. Yet he was prosecuted because of his status as a member of that class—that is, because he himself was depicted while engaged in sexually explicit conduct.

B. The General Rule Is That a Statute Designed To Protect Members of a Particular Class Shows the Legislature's Decision To Exempt Members of That Class from Criminal Liability for Their Own Exploitation

As discussed above, the general rule is that a statute designed for the protection of a particular class is presumed to exempt that protected class from criminal liability for their own harm—even when a protected individual was a necessary and willing participant in his or her own exploitation or harm by the perpetrator.[2] *See Gebardi*, 287 U.S. at 119; *United States v. Shear*, 962 F.2d 488,

---

[2] I note that the affirmative legislative intent not to punish members of a protected class does not bestow blanket immunity on individuals merely because of their status as members of a protected class. *See Gebardi*, 287 U.S. at 120 ("[the] [i]ncapacity of one to commit the substantive offense does not necessarily imply that he [or she] may with impunity conspire with others who are able to commit it"); *see also Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 40-41, 175 P.3d 906 (2008) (a boy who abused his four-year-old cousin could be criminally liable despite belonging to the class of persons the statute was meant to protect). A perpetrator may still be liable for harm to another victim even if he or she is a member of the same statutorily protected class as a victim.

5

493 (5th Cir. 1992) (employee not criminally liable for employer's OSHA

(Occupational Safety and Health Act of 1970, 29 U.S.C. § 666(e)) violations because

employees are "members of the particular class for whose special protection OSHA

was enacted"); *United States v. Doig*, 950 F.2d 411, 414 (7th Cir. 1991) (same);

*United States v. Amen*, 831 F.2d 373, 381 (2d Cir. 1987) ("When Congress assigns

guilt to only one type of participant in a transaction, it intends to leave the others

unpunished for the offense."); *Nigro v. United States*, 117 F.2d 624, 629 (8th Cir.

1941) ("the omission of Congress to make the act of an addict in purchasing

narcotics to satisfy his cravings an offense is evidence of an affirmative legislative

policy to leave the purchaser unpunished"); *Hedlund*, 165 Wn.2d at 652 (noting that

*Gebardi*'s "much older common law rule" has been made a part of the Washington

criminal code at RCW 9A.08.020(5)(a)).

In *Gebardi*, the foundational case for this principle, the Supreme Court

addressed whether a woman who was trafficked for the purpose of prostitution could

be held criminally liable for conspiring with the trafficker to accomplish her own

prostitution. The statute barring such trafficking[3] read, in relevant part,

---

[3] This was originally entitled the White Slave Traffic Act, former 18 U.S.C. § 398 (1910), and was enacted to protect "any woman or girl" from interstate trafficking for prostitution. A similar statute no longer limited to protecting females and no longer entitled "White Slave Traffic Act," but instead known as the Mann Acts, is now codified at 18 U.S.C. §§ 2421-2424.

6

> "*Any person* who shall knowingly transport . . . *any woman or girl* for the purpose of prostitution or debauchery, or for any other immoral purpose . . . [shall be deemed guilty of a felony] ."

287 U.S. at 118 n.1 (emphasis added) (second alteration in original) (quoting former 18 U.S.C. § 398 (1910)). This statute, like RCW 9.68A.050, is silent about whether the "person" subject to prosecution was meant to include the "woman or girl" who was trafficked. The Court, however, applied the rule that when Congress legislates to protect a particular class—there, the women or girls transported for prostitution—Congress is presumed to have protected members of that class from prosecution under the protective statute. Specifically, the *Gebardi* Court reasoned that the "failure of the Mann Act to condemn the woman's participation in those transportations which are effected with her mere consent" was "evidence of an affirmative legislative policy to leave her acquiescence unpunished." *Id.* at 123. It therefore concluded that Congress's "affirmative legislative policy" was to *protect* the woman—to "immuni[ze]" her from criminal liability—and that to subject her to any form of criminal punishment for her participation in her own exploitation "would contravene that policy." *Id.*

To be sure, as the majority notes, the specific holding of *Gebardi* is that the government could not prosecute the woman-victim as a *coconspirator* in the substantive Mann Act crime. Majority at 10. But that holding was a corollary of the

7

*Gebardi* Court's far less controversial conclusion that the government could not prosecute the woman-victim as a *principal*. And the *Gebardi* Court came to that decision—that the government could not prosecute the woman-victim whom the legislation was designed to protect as a principal in her own exploitation—despite the fact that the Mann Act allowed conviction of "any person," essentially the same language at issue in this case. 18 U.S.C. § 2421(a). In fact, the government did not even dispute this common sense conclusion that the victim could not be prosecuted for the crime as a principal in *Gebardi*; as that Court said, "[T]his conclusion [that the victim-woman cannot be prosecuted as a principal] is not disputed by the Government here, which contends only that the conspiracy charge will lie though the woman could not commit the substantive offense." 287 U.S. at 119.

The majority's focus on the fact that *Gebardi* holds that the government cannot prosecute a member of the class that the legislature intended to protect as a conspirator thus undermines, rather than supports, its argument. The inference that the government is barred from prosecuting a member of the protected victim class, whom the legislation was designed to protect, as a *conspirator* flows directly from the rule that the government is barred from prosecuting a member of the protected victim class, whom the legislation was designed to protect, as a *principal*.

Gray is being prosecuted as a principal in his own exploitation in this case. The rule that a criminal statute designed for the protection of a particular class cannot be used to prosecute a member of that protected class for his or her own victimization (absent specific legislative authorization) thus applies with even greater force here than it would in the vicarious conspiratorial liability situation.

This is especially true in Washington, since we already have specific legislative authorization to protect those victimized by crimes from disrespect, insensitivity, and prosecution. *See* RCW 7.69.010 (crime victims shall be treated with "dignity, respect, courtesy, and sensitivity," and crime victims' rights shall be "honored and protected by law enforcement agencies, prosecutors, and judges in a manner no less vigorous than the protections afforded criminal defendants"), .030(4) (mandating that reasonable effort are made to protect victims from harm for cooperating with prosecution); RCW 9A.08.020(5) ("Unless otherwise provided by this title or by the law defining the crime, a person is not an accomplice in a crime committed by another person if: (a) He or she is a victim of that crime . . . ."). Subjecting the protected minor in this case to prosecution for his own exploitation of himself without express legislative authorization conflicts with the public policy of protecting victims expressed in these statutes.

9

C. Because the Legislature Enacted RCW 9.68A.050 To Protect Children
from Sexual Exploitation, We Must Presume That the Legislature Also
Intended To Exempt Those Children from Prosecution for Their Own
Exploitation

RCW 9.68A.050 is identical to the statute interpreted in *Gebardi* in all

relevant aspects. Both use different words to describe the "person" subject to

prosecution, on the one hand, and the "woman or girl" (in the federal statute) or

"minor" (in the state statute) subject to protection from sexual exploitation, on the

other. Both are designed for the protection of the vulnerable class—"woman or girl"

transported for immoral purposes (in the federal statute) and "minor" depicted in

pornography (in our state statute). And both are silent about whether members of

the protected class can be prosecuted under that statute.

*Gebardi* held that in this situation, the legislature's silence cannot be read as

an intent to prosecute members of the protected class for their own victimization.

Instead, such silence must be read to exempt members of the protected class from

such prosecution. In other words, it shows "an affirmative legislative policy" to

10

leave the protected person who participates—here, Gray—"unpunished."[4] *Gebardi*, 287 U.S. at 123.[5]

## II. THE MAJORITY'S INTERPRETATION WOULD PRODUCE ABSURD RESULTS

The majority's contrary interpretation will produce absurd results. It means that a child who texts explicit depictions of himself or herself can be punished more harshly than an adult who does exactly the same thing. I can't believe the legislature intended that result. It means that a 12-year-old girl who is groomed or lured into taking and then texting explicit depictions of herself to an adult can be prosecuted for succumbing to that grooming. I can't believe the legislature intended that result.

Indeed, the majority's interpretation conflicts with what advances in adolescent behavioral and neuroscience research inform us: that such a punitive approach to behavior modification in juveniles is not effective in preventing future offenses. Gray, diagnosed with Asperger's syndrome, is a prime example of someone who would benefit more from treatment and specialized services regarding

---

[4] Gray was not charged with having a hand in exploiting other minors. That would be a different case.

[5] The State argues that "it is ultimately irrelevant whether Mr. Gray could or could not victimize himself by taking or disseminating such a photograph" because RCW 9.68A.050 does not require a named victim. State's Resp. to Br. of Amici Curiae ACLU et al. at 6. But the existence of some victim is critical. Even though the State does not have to name a victim to prove its case under RCW 9.68A.050, there must still be, as the State acknowledges, "an actual minor," *id.*, depicted in the image.

11

appropriate social behavior than from incarceration or the social isolation of registering as a sex offender. The majority, however, holds that the statute takes the punitive approach to the depicted, vulnerable victim child. I can't believe the legislature intended that absurdity, either.

In fact, our court is required to interpret statutes to avoid such "'unlikely, absurd, or strained consequences.'" *Columbia Riverkeeper v. Port of Vancouver, USA*, 188 Wn.2d 421, 443, 359 P.3d 1031 (2017) (quoting *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002)); *In re Dependency of D.L.B.*, 186 Wn.2d 103, 119, 376 P.3d 1099 (2016).

It is no answer to say, as the majority essentially does, that those are all different cases. Majority at 7-8, 15 (emphasizing that this is not a case of teens sexting to each other, who might deserve more protection). When we interpret a statute, we have to consider how that interpretation will affect other cases and whether it will produce absurd results. RCW 9.68A.050 criminalizes "develop[ing]" or "disseminat[ing]," etc., the minor's sexual depiction, no matter who receives it. Unless we interpret the statute to exempt the exploited minor from liability for his or her own exploitation, we are subjecting all children in all the examples listed

12

above—as well as the consensual sexting example that the majority tries to distinguish—to felony prosecution.

CONCLUSION

RCW 9.68A.050 is designed to tackle a significant problem: trafficking in sexual depictions of children. It tackles that problem with severe criminal penalties for the traffickers but protection for the depicted children. There is a long-standing and well-accepted rule that when a legislature enacts a criminal law to protect such a specific class, we cannot interpret that law to permit prosecution (and potential revictimization) of members of that protected class for their own exploitation— unless the legislature explicitly says so. The legislature did not say so here. Hence, the general rule applies: Gray, the depicted minor, cannot be prosecuted under this statute for disseminating pictures of himself. I would therefore vacate his conviction.

I respectfully dissent.

Gordon McCloud, J.

Gn, J

González, J.